# EXHIBIT 3

***In the Matter of the Extradition of Steven Lee***
**Docket No. 2:23-mj-09089-CLW**

Expert Opinion

Professor Sanghyun Lee

1. I have been retained by Steven Lee and Gibbons P.C. to perform professional services, including rendering advice regarding the application of Korean law, in connection with the Republic of Korea's request for Mr. Lee's extradition from the United States, currently pending in the United States District Court for the District of New Jersey.

Credentials

2. I am a Professor of Antitrust, Criminal Procedure, Criminal Law, and U.S. Law at the Global Law Department, College of Law, Soongsil University, South Korea. I received a Bachelor of Laws (LLB) from SNU College of Law in 1997, a Masters of Laws (LLM) from NYU School of Law in 2005, and a Doctor of Juridical Science (SJD) from Golden Gate University School of Law in 2008.

3. My prior relevant experience includes leading research projects on the laws of Korea, the United States, Mongolia, Vietnam, and other countries; offering legal opinions to law firms; and contributing to law review articles regarding comparisons of American and Korean Law.[1] I also served as a Judicial Research Officer at the Supreme Court of Korea from October 2008 through March 2010 and as a temporary staff member at Alston & Bird LLP in New York from August through December 2005.

Information Received from Counsel:  Relevant Treaty and Statutory Provisions

4. I have been provided with the background information and numerous documents from counsel. I was also made aware that any and all information in the possession of counsel was available to me in preparing this opinion.

5. Specifically relevant here, I have reviewed the Extradition Treaty between the Republic of Korea and the United States of America (the "Treaty"), which Treaty includes a provision related to lapse of time (Article 6) and rule of specialty (Article 15). The relevant provisions of the Treaty for purposes of this opinion are Articles 2, 6, and 15.

6. Article 2 states, in pertinent part, "[a]n offense shall be an extraditable offense if, at the time of the request, it is punishable under the laws in both Contracting States by deprivation of liberty for a period of more than one year, or by a more severe penalty." Art. 2(1).

7. Article 6 provides:

> Extradition may be denied under this Treaty when the prosecution or the execution of punishment of the offense for which extradition is requested would have been barred because of the statute of limitations of the Requested State had the same offense been

---

[1] A list of Korean and English publications is attached to this report.

committed in the Requested State. The period during which a person for whom extradition is sought fled from justice does not count towards the running of the statute of limitations. Acts or circumstances that would suspend the expiration of the statute of limitations of either State shall be given effect by the Requested State, and in this regard the Requesting State shall provide a written statement of the relevant provisions of its statute of limitations, which shall be conclusive.

8. Article 15 stipulates, in relevant part: "A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for: (a) the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such extradition is extraditable, or is a lesser included offense;. . . . or (c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment for an offense." Art. 15(1).

9. I understand from the filings in this case that the Government of Korea has provided a statement as to applicable Korean Law. Regarding the substantive Korean Law in issue, the arrest warrant charges Mr. Lee with three counts of embezzlement/breach of trust and occupational embezzlement/breach of trust pursuant to Articles 355 and 356, respectively, of the Criminal Act of Korea. ECF No. 1-1 at 49. Article 355 (Embezzlement/Breach of Trust) provides:

> (1) A person who, having the custody of another's property, embezzles or refuses to return it, shall be punished by imprisonment with labor for not more than five years or by a fine not exceeding Korean Won(KRW) 15 million
>
> (2) The preceding paragraph shall apply to a person who, administering another's business, obtains pecuniary advantage or causes a third person to do so from another in violation of one's duty, thereby causing loss to such person.

Article 356 (Occupational Embezzlement and Breach of Trust) provides: "A person who commits the crime as prescribed in Article 355 in violation of the duties of one's occupation, shall be punished by imprisonment with labor for not more than ten years or by a fine not exceeding KRW 30 million.

10. According to the materials submitted by the Korean government, each count is also subject to enhanced punishment pursuant to Article 3 of the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (the "Aggravated Punishment of Economic Crimes Act 1984") because the amount embezzled exceeds KRW 500 million. ECF No. 1-1 at 49. Article 3 of the Aggravated Punishment of Economic Crimes Act 1984 provides, in pertinent part, that a person who commits a crime stipulated by Article 355 or 356 of the Criminal Act "shall be punished by not less than three years imprisonment, when the gain of not less than KRW 500 million and not more than KRW 5 billion is obtained. ECF No. 1-1 at 49. Tax evasion, against which

the initial investigation was made in 2005 and subsequent arrest warrants were issued, is NOT covered by any substantive laws addressed by Korean Government, including the Aggravated Punishment of Economic Crime Act 1984.[2]

11. Regarding the applicable procedural law (*i.e.*, the law on statutes of limitation and their interpretation), pursuant to Article 6 of the Treaty, the Korean Government submits that the limitation period for a violation of the Aggravated Punishment of Economic Crime Act 1984 is 7 years under Article 249 of Criminal Procedure Act of Korea ("CPAK"). ECF No. 1-1 at 50-52. Article 252(1) of the Criminal Procedure Act of Korea provides that the "limitation period shall commence to run after the criminal act is completed." ECF No. 1-1 at 51. However, the Korean Government has stated that, pursuant to Article 253(3) of the CPAK, "[t]he limitation period shall be suspended during the period, for which an offender stays abroad for the purpose of escaping criminal punishment." ECF No. 1-1 at 51. Pursuant to Article 253 (1), "the limitation period shall suspend on the institution of the public prosecution and begin to proceed when a judgment rejecting a public prosecution or a judgment indicating a violation of jurisdiction becomes final and conclusive." Thus, applying this law to the facts of this case, I understand that because the latest alleged embezzlement was completed on October 15, 2004, the period during which a Korean prosecutor was able to effectively file an indictment with respect to the charges mentioned above under Korean law – if not suspended – lapsed on October 14, 2011, pursuant to the applicable Korean statute of limitations. ECF No. 1-1 at 52.

12. I have been asked to opine on the standard for when an individual "stays abroad for the purpose of escaping criminal punishment" under Article 253(3) of Criminal Procedure Act of Korea and whether the circumstances of this case support such a finding with respect to Mr. Lee.

Legal Standard

13. As explained, Article 252(1) of the CPAK provides that the statute of limitations commences when the final criminal act is completed. Article 253(1) of the Act stipulates that a period of the statute of limitations ceases to run on the institution of a public prosecution and begins to proceed when a judgment rejecting the public prosecution or a judgment on violation of jurisdiction becomes final. However, neither the filing or issuing of a warrant nor the commencing of an investigation prevents the statute of limitations from lapsing. Article 253(3) provides that the statute of limitations is suspended when the accused remains outside of Korea to avoid criminal punishment.[3]

---

[2] Different from the Act on the Aggravated Punishment, etc. of Specific Economic Crimes, adopted in 1984 (the Aggravated Punishment Economic Crime Act 1984), the Act on the Aggravated Punishment etc. of Specific Crimes, adopted in 1966, (the Aggravated Punishment Act 1966) has dealt with tax evasion with Art.8. The two Acts have different coverages since bribery and tax evasion are under the coverage of the Aggravated Punishment Act of 1966), NOT falling on specific economic crime of the Aggravated Punishment of Economic Crime Act 1984.

[3] Section 3 was adopted on December 2, 1995 and took effect on January 1, 1997.

14. Importantly, though, Article 253(3) is construed narrowly because it creates a legal impediment to the statute of limitations. *See* Pusan High Court Decision 2013no38; Pusan District Court Decision 2012gohap248; Byung-Han Lee, What Constitutes "With the Intent of Fleeing from Justice" within Meaning of Subsection 253(3) of rule of Criminal Procedure, p.31 (2008); *see also* Constitutional Court of Korea, Sep.27, 1993, 92 gunma 284 decision ("[O]ur Criminal Procedure Law has a statute of limitations system, and this system gives up the state's right to punish after a certain period of time, mainly for substantial reasons that the social impact of crimes has weakened over lapse of sufficient time and necessity of punishment on a crime(s) has disappeared. As a result, a state faces extinction of its power to punish and its right to prosecute criminals, thereby guaranteeing the stability of the legal status of criminal suspects by law."). Scholars in criminal justice explain the purposes of statutes of limitation by citing concerns about loss of evidence, the increasing possibility of wrongful judgement, and the excessive burden on the criminal justice system in light of its capacity. Byung-Han Lee, supra, p.18~19 (2008): Young-Gi Hong, A Critical Study on the Historical Theories about Nature of Statues of Limitation, Research on Legal History vol.37 p.256-259 (2008). Due to the weakened negative social impact and disappearance of criminality caused by the passage of time following an alleged criminal act, as cited by Constitutional Court of Korea, it is logical to interpret the "suspension of the statute of limitations" as an exception to the legal institution. *Id.* at 17.

15. Overseas fugitives are academically defined as "natives or foreigners who have fled the country for the purpose of circumventing legal action immediately after committing a crime, or while under investigation or under the execution of a sentence." Sang Cheol Shin & Yung Ho Im, The Current State of Transnational Fugitive Offenders and the Methods of Their Repatriation: Issues and Policy Proposals, Journal of the National Police Association, 2016, vol. 18, no. 1, Vol. 56, p.144. Such fugitives generally "use fake IDs or passports to launder their identities, and they avoid being tracked by the police by changing their residences or names regularly, making it difficult to apprehend and repatriate." Shin & Im, supra , pp. 138-177.

16. A fugitive's purpose of avoiding criminal punishment need not be the sole purpose for staying abroad. Supreme Court Decision 2008do4101. And, the "'purpose of avoiding criminal punishment' shall be deemed as being maintained without interruptions *unless objective circumstances exist which clearly reveal the offender's subjective intent being inconsistent with 'the purpose of escaping criminal punishment*." *Id.* (emphasis added); Supreme Court Decision 2019Do5925.

17. On the other hand, a defendant's intent cannot be to avoid criminal punishment regarding a particular case where it is difficult or impossible for the defendant to know of the case at issue or of the possibility of being punished for it. This is the case even if the defendant stays outside of Korea with the intent to avoid criminal prosecution for other cases about which the defendant is aware. Supreme Court 2013do9162 (investigation and prosecution of a defendant who remained in China to avoid prosecution for the sale of a fake Buddhist painting did NOT bar the application of the statute of limitations for other frauds during his stay in China due to lack of intent of avoiding criminal disposition regarding the other frauds).

4

18. The prosecution bears the burden of proving that the defendant's subjective intent was to escape punishment throughout the defendant's oversea stay when circumstances cast doubt on that intent. The circumstances to be considered include a continuous period of sufficient length to disregard the purpose of evasion in comparison to the period of statute of limitation, reason(s) why an individual cannot return to Korea, whether an individual's intent to return to Korea is notified to an investigation agency or a consulate, and the individual's primary residence. *See* SCt 2008Do4101 (finding that the prosecution failed to establish a continuing purpose of remaining abroad to avoid punishment when defendant was incarcerated in China for a period of eight years) SCt2011Do8462 (the prosecution failed to prove the purpose of evasion when defendant, stowing away to Japan's harbor and making a living as a singer without any approval from both countries for fifteen years' stay in Japan including his marriage to a woman with a permanent resident status).

19. To determine whether a defendant has "stay[ed] abroad for the purpose of escaping criminal punishment," Korean courts consider "various circumstances," including: "the limitations period for the indictment of the pertinent crime"; "circumstances making the offender unable to come back to his/her home country"; "whether the period with such circumstance was long enough to negate the intent of escaping punishment compared with the limitations period of the pertinent crime"; whether the intent to return was notified to the investigative authorities or consulate"; and "where the defendant resides for a living" (*i.e.*, primary residence). Supreme Court Decision 2008Do4104; see also Supreme Court Decision 2011Do8462 ("[T]he whole circumstances should be considered 'in determining the purpose of escaping criminal punishment' such as the pertinent crime's statute of limitations period; circumstance why the offender did not return; whether the duration of such circumstance is continuous and long enough compared to the pertinent crime's statute of limitations period so that the intent for escape cannot be recognized; whether an intent to return is notified to investigation authorities or the consulate office; and the Defendant's place of living (the Defendant's primary residence).").

20. In 2019, Korea acceded to the European Convention on Extradition of 1957, which provides that Contracting Parties "shall have the right to refuse extradition of its national." European Convention on Extradition. EST 24 – Extradition, 13.XIII.1957, Art. 6(a). Thus, nationality many be a hurdle to extradition if the respondent in an extradition request pending in Korea is a Korean national. William Julié & Juliette Fauvarque, *The rule against the extradition of nationals: overview and perspectives*, available https://www.ibanet.org/article (final visit on Jul.31, 2023). Thus, American courts should consider the nationality principle under article 3 [Nationality] of Extradition Treaty between US and Korea. Indeed, without clear evidence indicating a suspect's commission, and intent to avoid punishment, of the crime cited in the extradition request, courts where their citizens have resided have taken a careful attitude toward approving extradition requests. In practice, it is very rare that Korean courts approve extradition request of Korean citizens. The principle against extradition of its nationals remains reasonable to Korean legal practitioners because Criminal Act of Korea applies to crimes committed outside of Korea by Korean citizen pursuant to article 3 (nationality/personal principle) of the Criminal Act although the principle has

been exposed to criticism from scholars.  Hyeong-Seok Yoo, Protection of Human Right in the Extradition, Law Review vol.28 (Korean Law Association), p.371 (Nov., 2007).

21. Korean courts also consider whether a defendant left Korea before the initiation of an investigation and whether a defendant cooperated with the investigative agency before/after leaving Korea.  For example, the Seoul High Court has held that because a defendant left Korea before an investigation into alleged gift tax evasion began, "it is difficult to say that he was 'staying abroad for the purpose of avoiding criminal disposition,"; as such, the statute of limitations was not suspended.  Seoul High Court Decision 2018no93.  The Supreme Court of Korea decided that a defendant had no purpose of avoiding criminal punishment where, among other things, the individual had won a civil suit filed by the victim and voluntarily cooperated with the investigative agency before leaving Korea, 2002Do3641.

Analysis

22. Ultimately, because Mr. Lee has not "stay[ed] abroad for the purpose of escaping criminal punishment," under Art.253(3) of CPAK, the statute of limitations for each count of embezzlement, which is seven-year under Art.249 CPAK, has lapsed. There has been no indictment for a charge in this extradition request although there has been an extradition case with an indictment already filed.[4]  Therefore, Mr. Lee's extradition is time barred.

23. Objective circumstances inconsistent with the purpose of escape demonstrate that Mr. Lee, an American citizen, returned to the United States before he learned of any criminal investigation against embezzlement and that his purpose in returning home was to raise his family in the United States where he and his wife wished for their children to attend schools, *See* Supreme Court Decision 2008Do4101; 2019Do5925.

    a. *Mr. Lee's Background*:  Mr. Lee is an American citizen who was born and raised in California.  Mr. Lee became employed by Lone Star Funds, an American, Dallas-based private equity fund, after graduating from Harvard Business School in 1995.  In 1999, Lone Star assigned Mr. Lee to an open office in Korea.  Lee's wife and son Jonathan[5] remained home when he first left, demonstrating that Mr. Lee did not intend to relocate permanently to Korea but was traveling there only for a temporary employment opportunity.  They later joined him, but established a residence back in in Texas soon thereafter when the Lees began expecting their second son, Andrew.  *See* Bail Application Exhibits (Feb. 23, 2000 purchase of 12013 Edgestone Road, Dallas, TX home).  Andrew was born six weeks premature on December 8, 2000, and spent the first few months of his life in the U.S.  Mr. Lee's work continued in Korea and the

---

[4] Sang-Hun Choe, American is Extradited to South Korea for Trial in 1997 Murder, NY Times, Sep.22, 2015 (https://www.nytimes.com/).

[5] Mr. Lee has two children:  Jonathan Lee, who is 26 years old, and Andrew Lee, who is 23 years old.  At the time Mr. Lee traveled to Korea to assume his position in Lone Star's Korean office, Mr. Lee was married to Katherine Lee.  Mr. Lee is presently married to Eunkyung ("Mia") You, who is 48.

family returned to Korea in 2001, but soon thereafter, on January 22, 2003, purchased a home in New Jersey to begin preparations for the relocation back to the U.S. in January 22, 2003.  *See* Bail Application Exhibits (15 East Lane, Short Hills, NJ residence deed).  There is nothing to suggest that Mr. Lee ever applied for permanent residency or citizenship in Korea, and I have been advised by him that he did not do so.

b.  *Length of time the defendant is abroad relative to the limitations period*:  Here, the statute of limitations in Korea is only 7 years.  However, Mr. Lee has lived openly in the United States since 2005 (18 years).  That is more than twice the statute of limitations period suggesting that Mr. Lee—who is not an attorney, let alone an attorney practicing Korean criminal law and familiar with the nuances of what might suspend the statute of limitations—did not leave Korea for the purpose of avoiding criminal punishment.

c.  *Mr. Lee returned home before SPO began investigating him*:  Around 2003, when Mr. Lee's children began to reach school age, Mr. Lee and his wife resolved to return to the United States and began the process of relocating back home.  *See* Bail Application Exhibits (15 East Lane, Short Hills, NJ residence deed); Email dated August 4, 2004 regarding recommendations for doctors in New Jersey for Mr. Lee and his family; Email dated September 9, 2004 regarding Mr. Lee's tour of an elementary school in New Jersey for his son Jonathan.  Indeed, Mr. Lee's  successor, Paul Yoo[6], officially registered for a CEO of Lone Star Advisor Korea(LSAK) on July 25th, 2003.  And, while Mr. Lee continued to offer advice, he was no longer CEO of LSAK after August 2003.  *See* Certificate of Business License of Paul Yoo (Heo Won Yoo).

On May 14, 2005, Mr. Lee returned to the United States.  Thereafter, Mr. Lee resigned from Lone Star.  In October 2005, the SPO received a written accusation from the Seoul Regional Tax Office against four individuals involved in Lone Star's investments, including Mr. Lee, and 16 corporations.  ECF No. 1-1 at 39, ¶ 4.1.1.[7]  The SPO investigated the Tax Office's allegations

---

[6] Paul Yoo was indicted with charge of stock-price manipulation, breach of trust and tax evasion, thereby finally receiving sentence of three year imprisonment with suspended fine in 2011. Seoul High Court Decision 2011No806, 2011Chogi203, 2011Chogi204.

[7] The Tax Office alleged that Mr. Lee embezzled corporate funds of LSAK and HAK "by making payments on phony invoices for the services never rendered."  ECF No. 1-1 at 40, ¶ 4.1.2.  Hun-Joo Cheong, CFO of HAK, was indicted on charges of embezzlement but was found not guilty in 2012.  Supreme Court of Korea 2009Do5935; Seoul High Court 2012No2413 (Hun-Joo Cheong was found guilty of tax evasion and breach of trust).  In light of decisions of Hun Joo Cheong and Paul Yoo, all arrest warrants issued by Seoul District Court (No.15023 issued in 2006, No.2011-26755 issued in 2011, and No.2019-31192 issued in 2019) and political circumstances related to international arbitration award to Lone Star, Mr. Lee is expected to be investigated and tried with charges of not only embezzlement, but also tax evasion, bribery, stock-price manipulation, and breach of trust, which offenses are not mentioned in this extradition request. It bears noting that this violates Articles 2 and 15 (Rule of Specialty) of the Extradition Treaty.

from October to November 2005, ECF No. 1-1 at 40, ¶ 5.1.1, by which point Mr. Lee had been living home in New Jersey for almost half a year. The Korean Government alleges that Mr. Lee departed from Korea "while the investigation by the Seoul Regional Tax Office was ongoing." ECF No. 1-1 at 40, ¶ 5.1.2. However, the criminal investigation in to Mr. Lee did not occur until six months after Mr. Lee returned home. Further, the Tax Office did not file a complaint to the SPO until October 6, 2005.[8] Thus, Mr. Lee seemed to have no prior knowledge of the criminal investigation into embezzlement charges, as opposed to tax evasion, when he departed Korea in May 2005. Since he was not aware of criminal investigation against embezzlement at the time of leaving Korea, he would not have been seeking to flee from anything when he returned to his home country of the United States, particularly given that the plans for him to do so were so long in the making (as is described below). *See Seoul High Court Decision 2018no93* (holding that flight to avoid criminal prosecution was not established where the defendant left Korea before the criminal investigation into tax evasion began).

d.   *Permanent* Residence: Mr. Lee began the process of purchasing a home in Short Hills, New Jersey between 2003 and 2004, years before the initiation of any investigation. Indeed, Mr. Lee purchased a home in Short Hills, New Jersey in 2003, but when proposed construction on the home was not approved by local authorities, Mr. Lee sold that home on April 19, 2004, *see* Jan. 22, 2003 Deed for purchase of 15 East Lane, Short Hills; April 19, 2004 Deed for sale of 15 East Lane, Short Hills, but shortly thereafter, on July 29, 2004, purchased the home at which he and his family would reside for the next eight years. *See* July 29, 2004 Deed for purchase of 18 Madison Terrace, Short Hills; https://njparcels.com/sales/0712_2306_12 (New Jersey Parcels records indicating that Mr. Lee sold 18 Madison Terrace on October 21, 2013). In 2012, Mr. Lee purchased a home at 1414 Whipporwill Way, Mountainside, New Jersey and has lived there with his family ever since. Mr. Lee initiated the closing on his Korean home during his last visit to Korea, but the sale was not completed until eleven days after his departure on May 14th 2005 based upon public records I have reviewed. Given Mr. Lee's limited ability to speak and understand Korean, his assistant handled this transaction on his behalf and I understand that he does not currently have access to those records or details about factors that may have influenced timing of the closing for that transaction.

e.   *Cooperation with the SPO and Knowledge of the Charge*: In 2006, after living at home in New Jersey for almost one year, Mr. Lee's counsel, which is the same counsel who currently represents him, was contacted by the SPO for the first time through Lone Star Fund. Mr. Lee agreed to telephonically speak with Korean prosecutors and agreed to answer questions in writing. Mr. Lee, through counsel, also offered to meet in-person with prosecutors under certain conditions, but the SPO declined to avail itself of this opportunity. The existence of the communication with investigation agency is in sharp contrast

---

[8] Yonhap News, Lone Star Case Calendar, Nov. 2nd 2006 (in Korean language) (https://n.news.naver.com/mnews/article/001/0001456995?sid=101).

to facts of other cases where the statute of limitations was suspended based upon Article 6 of the Treaty. *See* Prosecutor Kim Yong-sik, Statement of Confirmation, 8.3 & 8.4 (citing unidentifiable whereabouts, flight, etc.). At the time, the prosecutor's questioning focused on whether Lone Star had bribed Korean officials to facilitate the firm's acquisition of Korea Exchange Bank ("KEB"). Though the SPO made reference to a warrant and extradition request, no such documents were served upon Mr. Lee or his counsel, with whom prosecutors were in frequent communication. *See* Communications between Lawrence Lustberg and the Korean SPO dated July 17, 2006, July 19, 2006, July 28, 2006, and August 8, 2006. Additionally, though on August 18, 2006, the SPO stated that "some suspected crime including bribery or illicit lobby case involved with [*sic*] Mr. Steven should be charged soon," there was no mention of the present embezzlement charge. Email dated August 18, 2006. Since 2006, the SPO has made no effort to reach or contact Mr. Lee or his counsel.

f.   *Community Service/Public Life:*  Since returning home in 2005, Mr. Lee has continued to live openly in the United States. He has never used aliases, nor did he ever purchase property or conduct business via a limited liability company or other corporate structure. For example, almost immediately upon returning home from Korea, Mr. Lee enrolled in art history courses at Columbia University for the fall and spring 2005-2006 semesters, openly and using his own name. *See* Columbia University Student Identification Card with Mr. Lee's name and photograph. This is an institution particularly familiar to Korean law enforcement, and thus, Mr. Lee's enrollment to Columbia University is the furthest thing from flight. Indeed, Korean prosecutors typically study at Columbia University Law School . For example, the Current Minister of Justice, Dong-Hoon Han, who requested extradition diplomatically, obtained an LLM from Columbia in 2005, and former Minister, Mi-Ae Choo, who signed extradition request (the third arrest warrant), was a visiting scholar at Columbia in 2004.

In 2005, Mr. Lee began attending public services in Redeemer Church in New York City and, here too, participated openly in fundraising for a new church building in the Upper West Side. Mr. Lee continued to be involved in the church community and began conducting pastoral counseling in Paramus, New Jersey, again all openly and publicly. For the past six years, Mr. Lee has been a devoted and active member of his church community in Praise Presbyterian Church in Somerset, New Jersey. Mr. Lee attends weekly services,  donates funds to maintain and repair church facilities, and has led weekly church group discussion and counseling services. He does all of this openly, never hiding his involvement. Likewise, a number of public registrations and filings accurately reflect Mr. Lee's  name and address. For example, Mr. Lee has a valid driver's license and passport. The deeds to Mr. Lee's current and prior homes, which are publicly accessible, are in Mr. Lee's own name. Mr. Lee has also registered to vote and donated to public campaigns. He has timely filed his taxes.

9

g. *An Italian court previously denied Korea's extradition request as time barred*: Mr. Lee traveled to Italy for vacation with his family on August 5, 2017, when he was arrested in Milan Malpensa Airport based on an Interpol "Red Notice." The Italian court found that any prosecution would be time-barred because "there is no evidence of any actions that have interrupted the lapsing of the statute of limitations." August 17, 2017 Order, Court of Appeal of Milano. The court reasoned that Mr. Lee had cooperated and communicated openly with the Korean prosecutor's office in 2006. *See id* ("see the copious e-mail correspondence obtained from Mr. Lee's American legal counsel, which attests that numerous contacts between Mr. Lee, his legal counsel and the Korean Prosecutors took place in 2006, with the final release of written affidavits by the person whose extradition is sought."). The decision of Court of Appeal of Milano regarding stock-price manipulation confirms Mr. Lee's lack of knowledge and intent to avoid criminal punishment with respect to the embezzlement charge. Indeed, there has been neither contact nor notice from the Korean Prosecutors Office with regards to the embezzlement charge, including during the arrest and release process in Italy. Indeed, having left Korea before the criminal investigation into that matter, Mr. Lee had neither knowledge nor intent to evade the Korean investigation, and certainly did not have the chance to cooperate with any on-going investigation into embezzlement. Thus, through thirteen (13) years have been elapsed since the commission of the third alleged embezzlement in 2004, the SPO have not engaged in sincere efforts to pursue Mr. Lee as a suspect of the embezzlement charges despite having two arrest warrants issued by Korean courts expired and contacting him through correspondences regarding bribery. This period of 13 years is significant given that the statute of limitation for embezzlement is 7 years.

The Italian court entered its final decision releasing Steven Lee on Aug 17, 2017.[9] The court held that there was no fact preventing the statute of limitations from lapsing regarding stock-price manipulation. Now that six years have passed since the final decision of the Italian court, based on the third arrest warrant (no. 2019-31192, issued on October 29, 2019 by Seoul Central District Court) which was based on alleged criminal conduct which included not only embezzlement alleged here, but also misappropriations and corporate tax evasion, Mr. Lee is subject to extradition request in his home country, the United States. If the extradition request is approved without concrete proof that his intent to avoid criminal punishment has remained during his eighteen-year-long stay in his home country, Article 6 of the Extradition Treaty will be violated.

24. If the request is approved, it is likely that Korean prosecutors will investigate Mr. Lee not only for the embezzlement charges written in the formal extradition request but also

---

[9] The second arrest warrant, written by Prosecutor Seok-yeol Yun who is current President of Republic of Korea, was based on misappropriation, tax evasion and embezzlements, and already expired in Nov., 2015.

other charges of misappropriation and corporate tax evasion. Additionally, it is expected to investigate bribery of officials of the Korean government regarding sale of Korean Exchange Bank to Lone Star Fund and stock-price manipulation charges, not related to embezzlements,[10] since the current extradition request is deeply related to a recent decision of the International Centre for Settlement of Investment Disputes(ICSID) ordering Korean government to offer $216.5 million award plus interest to Lone Star Fund.[11] It will lead to violation of Art.15 (rule of specialty) of the Extradition Treaty.

Conclusion

25. *Overall* circumstances indicate that Mr. Lee has had no intent to avoid criminal disposition on embezzlement since he returned home to the United States for the final time in May, 2005. As a result, he would not be considered a "fugitive" under Korean law and the statute of limitations would not have tolled at any time over the last nineteen (19) years after completion of embezzlement on Oct. 15th, 2004. The purpose of the statute of limitations under Korean Criminal Procedure should be respected in light of factors indicating legal stability of a suspect during eighteen (18) years of open and peaceful residence in his home country without any crime, far more than the statutory time of seven (7) years. Additionally, extradition requests, once approved, will lead to investigation of misappropriation, tax-evasion, and other charges, including stock-price manipulation and bribery, not related to embezzlement. Therefore, Mr. Lee's extradition would violate Article 6 and 15 of the US-Korea Treaty.

---

[10] KBS, successful Investigation ? extradition requests continuing for fifteen years, Sep. 22nd, 2022 (https://news.kbs.co.kr/news/mobile/view/view.do?ncd=5561885) (Dong-Hun Han, Minister of Justice Responding to Mr.Seung-Won Kim Congressman's Question 'why Michael Tomson was not indicted ?' : "confidential because extradition process against Ellis Short (vice-president of Lone Star Fund), Steven Lee, and Micheal Tomson (Legal Advisor of LSF)" has been going on). (Dong-Hun Han, Minister of Justice, mentioned that Lone Star folks e.g. Steven Lee, Paul Yoo, Michael Thomson and Ellis Short were under stock manipulation charge about fake capital reduction in response to Mr.Seung-Won Kim Congressman's question) The 21st National Assembly (2020-2024) Records, General Assembly 400 session-3, Sep.19, 2022, p.38

[11] More proofs from investigating Steven Lee in Korea in contrast with the decision of ICSID and criminal trial on further investigation on suspicions related to sale of Korean Exchange Bank to Lone Star such as bribery, stock-price manipulation and tax evasion, will work in favor of Korean government and political party in power facing general election for national congressmen next year. Korean government filed an appeal to cancel the decision of ICSID on Sep. 1st, 2023. Boram Park, S. Korea files for cancellation of int'l tribunal's compensation order in Lone Star case, Yonhap News, Sep.1st 2023 (https://en.yna.co.kr/view/AEN20230901004600315)

## List of Publications (July 2023)

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal / Pages | Institution / Date of Publication | Language |
|---|---|---|---|---|---|---|---|
| 1 | Law Journal | 2 | a main author | Research on Improving Standards of Admissibility of Digital Voice-Recorded File under Criminal Procedure Law — Centering on the Possibility of Case Law Emphasizing Hash Value — | Law Review / Vol.32 no.3 p.31-59 | Yonsei Univ. Legal Research Center / Sep.2022. | Korean |
| 2 | Journal | 3 | co-author | A Study on Forgery Techniques of Smartphone Voice Recording File Structure and Metadata | Journal of the Convergence on Culture and Technology vol.8 no.6 / p.807-812 | International Promotion Agency of Culture Technology / Nov. 2022 | Korean |
| 3 | Law Journal | 1 | author | Critical Research on En Banc Decision of Supreme Court of Korea (2019Do3047) with respect to Out-Of-Barrack Anal Sexual Intercourse between Solders: From the Perspectives of Criminal Law, Christian Ethics, and Comparative Legal Analysis | Church & Law Vol.9 no.1 p.271-302 | Korea Church Law Association Aug.2022 | Korean |
| 4 | Law Journal | 1 | author | Research on Shifting American Military Legislation and Case Law on Homosexual Behavior, Gay Lesbian Transgender Servicemen, and Gender Reassignment | Soongsil Law Review Vol.50 | Soongsil Univ. Legal Research Institute May,2021 | Korean |
| 5 | Book | 3 | co-author | **Dictionary of Criminal Law and Procedure: Mongolian, Korean and English** | | National Legal Institute of Mongolia Aug.2021 | **English-Korean-Mongolian** |

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal | Institution | Language |
|-----|------|-------------------|------|------------------------|-----------------|-------------|----------|
| | | | | | Pages | Date of Publication | |
| 6 | Book | | co-author | Why Healthy-Family Fundamental Law is Undermined ? | p. 1~ 255 | Brilliant Idea 밝은 생각 Mar.2022 | Korean |
| 7 | Law Journal | 1 | an author | Analyzing Criminal Penalty of Monopoly Restraint Fair Trade Act and Suggesting Proper Revision based on Criminal Law Theory | Soongsil Law Review vol.47 PP. 831 ~ 863 | Soongsil Univ. Legal Research Institute May,2020 | Korean |
| 8 | Law Journal | 1 | An author | Limiting Promotion Activity of Unregistered Student Group Pursuant to Ordinance of Christian University and Excessive Intervention by Governmental Organization: Critical Analysis of Decision of National Human Right Commission | Church & Law Vol.7 no.2 pp.256-278 | Korea Church Law Association Feb..2021 | Korean |
| 9 | Journal | 1 | an author | Research on Comprehensive Anti-Discrimination Law and Related Cases in America | Church & Law vol.7 no.1 PP.185 ~ 207 | Korea Church Law Association Aug.2020 | Korean |
| 10 | Book | 6 | co-author | Anti-Discrimination Bill, Agree or Disagree ? | PP. 0 ~ 411 | Brilliant Idea June. 2020 | Korean |
| 11 | Book | 11 | co-author | Life and Sex II | | Brilliant Idea Aug.2020. | Korean |
| 12 | Law Journal | 1 | an author | Discrimination Standard based on Sexual Orientation under National Human Right Commission(NHRC) Act with respect to Autonomy and Freedom to Religious Education of Religious University — Analyzing NHRC Decisions — | Law Review Vol.29 n PP. 1 ~ 36 | Yonsei Univ. Legal Research Institute Mar.2019 | Korean |

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal | Institution | Language |
|-----|------|-------------------|------|------------------------|-----------------|-------------|----------|
|     |      |                   |      |                        | Pages | Date of Publication | |
| 13 | Law Journal | 1인 | an author | Research on Reformation of Criminal Law and Procedure in Mongolia | North-East Asian Law Review Vol.12 no.2 | **The Institute for Northeast Asian Law Chonbuk National University** | Korean |
|    |             |    |           |                                                                   | PP. 121 ~ 147 | Sep.2018 | |
| 14 | Law Journal | 1 | an author | Decriminalization Policy of Constitutional Court on Conscientious Objection to Military Service and Proper Design on Alternative Service System | Soongsil Law Review vol.42 | Soongsil Univ. Law Research Institute | Korean |
|    |             |   |           |                                                                                                                                            | PP.55 ~ 83 | Sep.2018 | |
| 15 | **Book** | 16 | Co-author | **'Changing South Korean Criminal Law on Sex Offense and Adultery'** Current Legal Issues in South Korea | Korea Legislation Research Institute(KLRI) | | **English** |
|    |          |    |           |                                                                                                      | (PP. 161 ~ 176) total 367 page | Dec.2017 | |
| 16 | Journal | 1 | An author | SUGGESTING RATIONAL REVISION ON MILITARY CRIMINAL CODE ARTICLE 92-6 AGAINST SOLDERS' INDECENT BEHAVIOR AND ANAL SEX | Theses of Military Evangelical Association of Korea: Military Mission vol.16 | Military Evangelical Association of Korea | Korean |
|    |         |   |           |                                                                                                                 | pp. 67-115 | Oct.2017 | |
| 17 | Law Journal | 1 | An author | Critical Approach to Anti-discrimination Law with Sexual Orientation: Centering on Research of Anglo-American Law | Soongsil Law Review vol.39 | Soongsil Univ. Legal Research Institute | Korean |
|    |             |   |           |                                                                                                                 | PP.161 ~ 194 | Sep.2017 | |

14

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal | Institution | Language |
|-----|------|-------------------|------|------------------------|-----------------|-------------|----------|
| | | | | | Pages | Date of Publication | |
| 18 | **BOOK** | 1 | an author | **Strategies to Achieve a Binding International Agreement on Regulating Cartels: Overcoming Doha Standstill** | Springer | **Springer International** | **English** |
| | | | | | pp.1~336 | Apr.2017 | |
| 19 | Law Journal | 1 | an author | Comparative Legal Research on Criminal Defamation of the Dead & its Implication | GNU Law Review vol.24 no.4 | Gyungsang National Univ. Legal Research Ins. | Korean |
| | | | | | PP.199-226 | Oct.2016 | |
| 20 | Journal | 1 | an author | **Transplanting Jury Trials in South Korean Legal Soils: Comparative Analysis with Jury Trials in the United States** | Asian Journal of Criminology | Springer Netherland | **English (SCOPUS)** |
| | | | | | PP.111–133 | June,2016 | |
| 21 | Law Journal` | 1 | an author | Research on Military Criminal Code Article 92-6 against Solders' Indecent Activity & Anal Sex: Centering on Korean Legal History of Homosexuality, its Harm on Legal Interests, and Analysis of Marcum Case | Soongsil Law Review vol.36 | Soongsil Univ. Legal Research Institute | Korean |
| | | | | | PP.249 – 288 | July 2016 | |
| 22 | Law Journal | 2 | corres-ponding author | The Effect of the Quality of Regulation on the Total Product and the Economic Growth in OECD Countries | Soongsil Law Review vol.34 | Soongsil Univ Legal Research Institute | Korean |
| | | | | | PP. 1 ~ 30 | Jan.,2016 | |
| 23 | Law Journal | 1 | an author | Comparative Legal Research on United Kingdom's Legal Ground of Closed Circuit Television(CCTV) and Criminal Evidence Law with Respect to its Recorded Images | Bub-Jo Vol.64 no.10 | Bub-Jo Association | Korean |
| | | | | | PP.199 – 240 | Oct., 2015 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24 | Law Journal | 1편 | an author | Research on Vietnamese Laws and Institutions on Administration : Centering on Constitution, Administrative Procedure & Anti-Corruption Law | North-East Asian Law Review vol.9 no.2 | The Institute for Northeast Asian Law Chonbuk National University | Korean |
| | | | | | pp. 79 – 103 | Sep.2015 | |
| 25 | Law Journal | 1편 | an author | Research on Criminal Legislations against Identity Theft & Impersonation through Social Network Services | Criminal Policy Research vol.25 no.3 | Korean Institute of Criminology | Korean |
| | | | | | PP.127 – 159 | Oct.2014 | |
| 26 | Law Journal | 1 | an author | **Korean Cybercrime Legislation Facing Challenges of Massive Intrusion against Privacy** | Soongsil Law Review | Soongsil Univ. Legal Research Institute | **English** |
| | | | | | PP. 161 ~ 180 | Jul, 2014 | |
| 27 | Law Journal | 2 | a main author | Research on Laws during the Process of Economic Development of Korea: centering on Capital, Labor, and Technology areas | Ewha Law Review | Ewha Women's Univ. Legal Research Inst. | Korean |
| | | | | | PP. 299 ~ 341 | Sep., 2013 | |
| 28 | Law Journal | 1 | an author | Research on Shifting Foreign Investment Law and Environmental Law in Mongolia | HUFS Law Review Vol.37 no.3 | Legal Research Ins. of HUFS(Hankook Univ of Foreign Studies) | Korean |
| | | | | | PP.21 ~ 36 | Aug.2013 | |
| 29 | Law Journal | 2 | corresponding author | Article 20 Obligations under the KORUS FTA: The Deteriorating Environment for Climate Change Legislation in the U.S. | American Constitution Law Journal Vol.24 no.2 | American Constitution Association | **English** |
| | | | | | PP. 439 ~ 489 | Aug, 2013 | |

| 30 | Law Journal | 1 | an author | Research on a Writ of Habeas Corpus in American Criminal Procedure | Soongsil Law Review vol.30 | Soongsil Univ. Legal Research Inst. | Korean |
| | | | | | PP. 21 ~ 40 | Jul, 2013 | |
| 31 | Law Journal | 1 | an author | Research on Penalties against Information-Security Infringing Crimes : centering on so called the Network Act and the Infrastructure Protection Act | New Trend of Law on Criminal Justice No.38 | Supreme Prosecutors Office of Korea | Korean |
| | | | | | PP. 140 ~ 173 | 2013.3 | |
| 32 | Journal | 3 | co-author | The Effectiveness of Social Network Service on Political Campaign | e-Biz vol.14 no.1 | International e-Business Association | Korean |
| | | | | | PP. 113 - 132 | Mar.2013 | |
| 33 | **BOOK** | 3 | co-author | Regime Shift and Law of Vietnam 베트남의 체제전환과 법 | n/a | Publishing Center of Seoul National Univ. | Korean |
| | | | | | PP. 0 ~ 286 | Dec. 2013 | |
| 34 | Law Journal | 1명 | an author | LEGAL SANCTIONS AGAINST PUBLIC-BID-RIGGING: ISSUES AND IMPROVEMENTS | Korean Public Procurement Journal vol.11 no.2 | Korean Public Procurement Association | Korean |
| | | | | | PP. 55 ~ 73 | Dec.2012 | |
| 35 | Law Journal | 1명 | an author | Comparative Legal Research on the Impact of Decisions of the U.S. Federal Court on Those of the Supreme Court of Korea | Hong-ik Law Review vo.13-3 | Legal Research Institute of Hongik Univ. | Korean |
| | | | | | PP. 411 – 434 | Oct., 2012 | |
| 36 | Law Journal | 1명 | an author | A Research on British Laws regarding Prevention of Dishonest Solicitation and Conflict of Interest & Its Implication | Criminal Law Research vol.24-3 | Korean Criminal Law Association | Korean |
| | | | | | PP. 291 - 311 | Sep,2012 | |

| 37 | Law Journal | 2명 | 주저자 | Liberalization of Cyber-Election Campaign through Social Network Service & Response of Criminal Penalty of Public Election Act to Cyber-Election Crime | Law Review Vol.46 <br><br> PP.261-290 | Korean Law Association <br><br> May 2012 | Korean |
| 38 | Law Journal | 1명 | an author | Rule for Distinguishing Bid-rigging from Joint-bidding through Establishing Consortium in Public Bid | Bub-Jo vol.61 no.4 <br><br> PP.49-80 | Bub-Jo Association <br><br> Apr. 2012 | Korean |
| 39 | Journal | 1명 | an author | Cyber-Security Law in the United States: Centering on Responses of Legislative, Judiciary, and Executive Body | Internet & Information Security <br><br> PP. 109-131 | Korea Internet & Security Agency <br><br> Jan., 2012 | Korean |
| 40 | Law Journal | 1명 | an author | Implementing Reasonable Rules for Imposing Criminal Penalty on Joint Bidders in Public Bid: Critical Comment on South Korea's Case | Currents International Trade Law Journal <br><br> PP. 330-359 | South Texas College of Law <br><br> Dec, 2011 | **English** |
| 41 | Journal | 1명 | an author | Trend of Vietnamese Law Research in Korea : from 2002 to 2011 | Vietnamese Studies Review vol.11 <br><br> PP. 161 ~ 180 | Korean Association of Vietnamese Studies <br><br> Nov.2011 | Korean |
| 42 | Law Journal | 1명 | an author | the impact of social network sites on election and regulation under election law : centering on the United States and Canada | New Trend of Criminal Law <br><br> PP.84 - 109 | Supreme Prosecutors' Office <br><br> 2011.9 | Korean |
| 43 | Journal | 1명 | an author | Construction and Legal Policy of Breach of Trust under Korea Criminal Code regarding Corporate Governance in light of two Supreme Court`s Decisions on Samsung Everland and SDS | Journal of Regulation Study vol.20-1 <br><br> PP.113-144 | Korean Economic Research Institute <br><br> 2011.7 | Korean |

| | | | | | | |
|---|---|---|---|---|---|---|
| 44 | Law Journal | 1명 | an author | Comparative Legal Analysis of Principle of Indictment without Surplusage :sec.118(2) of Regulations on Criminal Procedure in Korea and U.S. Federal Criminal Procedure Rule 7(d) | Bub-Jo vol.60 no.2<br><br>PP. 142 – 184 | Bub-Jo Association<br><br>Feb, 2011 | Korean |
| 45 | BOOK | 11 | co-author | Corporate Crime Research<br>기업 범죄 연구 | <br><br>(PP. 99-118)<br>Total 345page | Kyung-in Moon-Hwa Co.<br><br>Feb, 2011 | Korean |
| 46 | Journal | 1명 | an author | A Current Status of the Internet based Transactions related to Crime and its Countermeasure in Korea and the U,S. | Korean On-line Business Review<br>PP.39-60 | Korean Online Business Association<br>Dec,2010 | Korean |
| 47 | Law Journal | 1명 | an author | Applicability of principle of Indivisibility of Criminal Complaint Exclusive Accusation under Antitrust Law | Bub-Jo vol.59 no.11<br>PP.223-265 | Bub-Jo Association<br>2010.11 | Korean |
| 48 | BOOK | 1명 | an author | Realities, Law, Practices of Cybercrime in the U.S.<br>미국의 사이버범죄 현실, 법, 실무 | n/a<br><br>PP. 1 ~ 270 | Korean Institute of Criminology<br>Dec, 2010 | **English** & Korean |
| 49 | Law Journal | 1명 | an author | Limited Coverage of Criminal Suspect's Right not to Reveal One's Face against His/Her Will : Comparative Analysis to the U.S. Law | Soongsil Law Review vol.24<br>PP.115 – 144 | Soongsil Univ. Legal Research Institute<br>May, 2010 | Korean |
| 50 | Law Journal | 1명 | an author | Comparative Legal Analysis of United States' Criminal Contempt of Court and Korea's Criminal Code sec.140 so as to Secure the Effectiveness of Injunction | Korean Journal of Comparative Criminal Law vol.11-2<br>PP. 285 ~ 307 | Korean Comparative Criminal Law Association<br>Dec, 2009 | Korean |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51 | Law Journal | 1명 | an author | Comparing 'Fruits of the Poisonous Tree Doctrine' in Criminal Procedures of the U.S. and Korea in light of Supreme Court Cases regarding Admissibility of Secondary Evidence Obtained through Statement without Miranda Warning | Joong-Ahng Law Review vol. 11 no.2 / pp.249- 284 | Joong-Ahng Law Association / Nov, 2009 | Korean |
| 52 | Law Journal | 1명 | an author | Infringement of Duty to Protect Pedestrians in a Crosswalk in Korea's Transportational Criminal Law under Comparative Analysis with the U.S. and the Vienna Convention | Korea Law Review vol.54 / pp.243 -282 | Korea Univ. Law Research Institute / Sep.2009 | Korean |
| 53 | Law Journal | 1명 | an author | Bid-Rigging: the Object of Strict Application of a Provision against Bid/auction Interference (Korean Criminal Code Art.315) | Journal of Criminal Law vol.21 no.2 / PP. 79- 98 | Korean Criminal Law Association / 2009.8 | Korean |
| 54 | Journal | 1명 | an author | Proper Regulation on LBO(Leveraged-Buy-Out) | Journal of Regulation Study / PP. 107 - 141 | KERI / 2009.6 | Korean |
| 55 | Law Journal | 1명 | an author | Effective Strategies for International Agreement Regulating Cartels | International Trade Law / PP. 149-192 | Ministry of Justice of Korea / 2009.6 | **English** |
| 56 | Dissertation | 1명 | an author | The Effective Approaches of International Law regarding Cartels | S.J.D. Dissertation / PP. 1 ~ 350 | Golden Gate University School of Law / 2008.9 | **English** |
| 57 | Law Journal | 1명 | an author | Using Action in Damages to Improve Criminal Penalties against Cartels: Comparative Analysis of Competition Law of United States and South Korea | Currents: International Trade Law Journal / PP.55-69 | South Texas College of Law / 2007.12 | **English** |

20

| 58 | Disser-tation | 1명 | an author | Research on Properness of Penalty of Anti-Monopoly Law and its Alternative<br><br>독점규제형법의 정당성과 그 대안에 관한 연구 | Master of Law Dissertation<br><br>PP. 1-131 | Graduate School of Korea Univ.<br><br>2002.8 | Korean |

*In the Matter of the Extradition of Steven Lee*
**Docket No. 2:23-mj-09089-CLW**

Expert Opinion

Professor Sanghyun Lee

1. I have been retained by Steven Lee and Gibbons P.C. to perform professional services, including rendering advice regarding the application of Korean law, in connection with the Republic of Korea's request for Mr. Lee's extradition from the United States, currently pending in the United States District Court for the District of New Jersey.

Credentials

2. I am a Professor of Antitrust, Criminal Procedure, Criminal Law, and U.S. Law at the Global Law Department, College of Law, Soongsil University, South Korea. I received a Bachelor of Laws (LLB) from SNU College of Law in 1997, a Masters of Laws (LLM) from NYU School of Law in 2005, and a Doctor of Juridical Science (SJD) from Golden Gate University School of Law in 2008.

3. My prior relevant experience includes leading research projects on the laws of Korea, the United States, Mongolia, Vietnam, and other countries; offering legal opinions to law firms; and contributing to law review articles regarding comparisons of American and Korean Law.[1] I also served as a Judicial Research Officer at the Supreme Court of Korea from October 2008 through March 2010 and as a temporary staff member at Alston & Bird LLP in New York from August through December 2005.

Information Received from Counsel:  Relevant Treaty and Statutory Provisions

4. I have been provided with the background information and numerous documents from counsel. I was also made aware that any and all information in the possession of counsel was available to me in preparing this opinion.

5. Specifically relevant here, I have reviewed the Extradition Treaty between the Republic of Korea and the United States of America (the "Treaty"), which Treaty includes a provision related to lapse of time (Article 6) and rule of specialty (Article 15). The relevant provisions of the Treaty for purposes of this opinion are Articles 2, 6, and 15.

6. Article 2 states, in pertinent part, "[a]n offense shall be an extraditable offense if, at the time of the request, it is punishable under the laws in both Contracting States by deprivation of liberty for a period of more than one year, or by a more severe penalty." Art. 2(1).

7. Article 6 provides:

> Extradition may be denied under this Treaty when the prosecution or the execution of punishment of the offense for which extradition is requested would have been barred because of the statute of limitations of the Requested State had the same offense been

---

[1] A list of Korean and English publications is attached to this report.

committed in the Requested State.  The period during which a person for whom extradition is sought fled from justice does not count towards the running of the statute of limitations.  Acts or circumstances that would suspend the expiration of the statute of limitations of either State shall be given effect by the Requested State, and in this regard the Requesting State shall provide a written statement of the relevant provisions of its statute of limitations, which shall be conclusive.

8. Article 15 stipulates, in relevant part:  "A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:  (a) the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable, or is a lesser included offense;. . . . or (c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment for an offense."  Art. 15(1).

9. I understand from the filings in this case that the Government of Korea has provided a statement as to applicable Korean Law.  Regarding the substantive Korean Law in issue, the arrest warrant charges Mr. Lee with three counts of embezzlement/breach of trust and occupational embezzlement/breach of trust pursuant to Articles 355 and 356, respectively, of the Criminal Act of Korea.  ECF No. 1-1 at 49.  Article 355 (Embezzlement/Breach of Trust) provides:

> (1) A person who, having the custody of another's property, embezzles or refuses to return it, shall be punished by imprisonment with labor for not more than five years or by a fine not exceeding Korean Won(KRW) 15 million

> (2) The preceding paragraph shall apply to a person who, administering another's business, obtains pecuniary advantage or causes a third person to do so from another in violation of one's duty, thereby causing loss to such person.

Article 356 (Occupational Embezzlement and Breach of Trust) provides:  "A person who commits the crime as prescribed in Article 355 in violation of the duties of one's occupation, shall be punished by imprisonment with labor for not more than ten years or by a fine not exceeding KRW 30 million.

10. According to the materials submitted by the Korean government, each count is also subject to enhanced punishment pursuant to Article 3 of the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (the "Aggravated Punishment of Economic Crimes Act 1984") because the amount embezzled exceeds KRW 500 million.  ECF No. 1-1 at 49. Article 3 of the Aggravated Punishment of Economic Crimes Act 1984 provides, in pertinent part, that a person who commits a crime stipulated by Article 355 or 356 of the Criminal Act "shall be punished by not less than three years imprisonment, when the gain of not less than KRW 500 million and not more than KRW 5 billion is obtained.  ECF No. 1-1 at 49.  Tax evasion, against which

the initial investigation was made in 2005 and subsequent arrest warrants were issued, is NOT covered by any substantive laws addressed by Korean Government, including the Aggravated Punishment of Economic Crime Act 1984.[2]

11. Regarding the applicable procedural law (*i.e.*, the law on statutes of limitation and their interpretation), pursuant to Article 6 of the Treaty, the Korean Government submits that the limitation period for a violation of the Aggravated Punishment of Economic Crime Act 1984 is 7 years under Article 249 of Criminal Procedure Act of Korea ("CPAK"). ECF No. 1-1 at 50-52. Article 252(1) of the Criminal Procedure Act of Korea provides that the "limitation period shall commence to run after the criminal act is completed." ECF No. 1-1 at 51. However, the Korean Government has stated that, pursuant to Article 253(3) of the CPAK, "[t]he limitation period shall be suspended during the period, for which an offender stays abroad for the purpose of escaping criminal punishment." ECF No. 1-1 at 51. Pursuant to Article 253 (1), "the limitation period shall suspend on the institution of the public prosecution and begin to proceed when a judgment rejecting a public prosecution or a judgment indicating a violation of jurisdiction becomes final and conclusive." Thus, applying this law to the facts of this case, I understand that because the latest alleged embezzlement was completed on October 15, 2004, the period during which a Korean prosecutor was able to effectively file an indictment with respect to the charges mentioned above under Korean law – if not suspended – lapsed on October 14, 2011, pursuant to the applicable Korean statute of limitations. ECF No. 1-1 at 52.

12. I have been asked to opine on the standard for when an individual "stays abroad for the purpose of escaping criminal punishment" under Article 253(3) of Criminal Procedure Act of Korea and whether the circumstances of this case support such a finding with respect to Mr. Lee.

Legal Standard

13. As explained, Article 252(1) of the CPAK provides that the statute of limitations commences when the final criminal act is completed. Article 253(1) of the Act stipulates that a period of the statute of limitations ceases to run on the institution of a public prosecution and begins to proceed when a judgment rejecting the public prosecution or a judgment on violation of jurisdiction becomes final. However, neither the filing or issuing of a warrant nor the commencing of an investigation prevents the statute of limitations from lapsing. Article 253(3) provides that the statute of limitations is suspended when the accused remains outside of Korea to avoid criminal punishment.[3]

---

[2] Different from the Act on the Aggravated Punishment, etc. of Specific Economic Crimes, adopted in 1984 (the Aggravated Punishment Economic Crime Act 1984), the Act on the Aggravated Punishment etc. of Specific Crimes, adopted in 1966, (the Aggravated Punishment Act 1966) has dealt with tax evasion with Art.8. The two Acts have different coverages since bribery and tax evasion are under the coverage of the Aggravated Punishment Act of 1966), NOT falling on specific economic crime of the Aggravated Punishment of Economic Crime Act 1984.

[3] Section 3 was adopted on December 2, 1995 and took effect on January 1, 1997.

14. Importantly, though, Article 253(3) is construed narrowly because it creates a legal impediment to the statute of limitations. *See* Pusan High Court Decision 2013no38; Pusan District Court Decision 2012gohap248; Byung-Han Lee, What Constitutes "With the Intent of Fleeing from Justice" within Meaning of Subsection 253(3) of rule of Criminal Procedure, p.31 (2008); *see also* Constitutional Court of Korea, Sep.27, 1993, 92 gunma 284 decision ("[O]ur Criminal Procedure Law has a statute of limitations system, and this system gives up the state's right to punish after a certain period of time, mainly for substantial reasons that the social impact of crimes has weakened over lapse of sufficient time and necessity of punishment on a crime(s) has disappeared. As a result, a state faces extinction of its power to punish and its right to prosecute criminals, thereby guaranteeing the stability of the legal status of criminal suspects by law."). Scholars in criminal justice explain the purposes of statutes of limitation by citing concerns about loss of evidence, the increasing possibility of wrongful judgement, and the excessive burden on the criminal justice system in light of its capacity. Byung-Han Lee, supra, p.18~19 (2008): Young-Gi Hong, A Critical Study on the Historical Theories about Nature of Statues of Limitation, Research on Legal History vol.37 p.256-259 (2008). Due to the weakened negative social impact and disappearance of criminality caused by the passage of time following an alleged criminal act, as cited by Constitutional Court of Korea, it is logical to interpret the "suspension of the statute of limitations" as an exception to the legal institution. *Id.* at 17.

15. Overseas fugitives are academically defined as "natives or foreigners who have fled the country for the purpose of circumventing legal action immediately after committing a crime, or while under investigation or under the execution of a sentence." Sang Cheol Shin & Yung Ho Im, The Current State of Transnational Fugitive Offenders and the Methods of Their Repatriation: Issues and Policy Proposals, Journal of the National Police Association, 2016, vol. 18, no. 1, Vol. 56, p.144. Such fugitives generally "use fake IDs or passports to launder their identities, and they avoid being tracked by the police by changing their residences or names regularly, making it difficult to apprehend and repatriate." Shin & Im, supra , pp. 138-177.

16. A fugitive's purpose of avoiding criminal punishment need not be the sole purpose for staying abroad. Supreme Court Decision 2008do4101. And, the "'purpose of avoiding criminal punishment' shall be deemed as being maintained without interruptions *unless objective circumstances exist which clearly reveal the offender's subjective intent being inconsistent with 'the purpose of escaping criminal punishment*." *Id.* (emphasis added); Supreme Court Decision 2019Do5925.

17. On the other hand, a defendant's intent cannot be to avoid criminal punishment regarding a particular case where it is difficult or impossible for the defendant to know of the case at issue or of the possibility of being punished for it. This is the case even if the defendant stays outside of Korea with the intent to avoid criminal prosecution for other cases about which the defendant is aware. Supreme Court 2013do9162 (investigation and prosecution of a defendant who remained in China to avoid prosecution for the sale of a fake Buddhist painting did NOT bar the application of the statute of limitations for other frauds during his stay in China due to lack of intent of avoiding criminal disposition regarding the other frauds).

4

18. The prosecution bears the burden of proving that the defendant's subjective intent was to escape punishment throughout the defendant's oversea stay when circumstances cast doubt on that intent. The circumstances to be considered include a continuous period of sufficient length to disregard the purpose of evasion in comparison to the period of statute of limitation, reason(s) why an individual cannot return to Korea, whether an individual's intent to return to Korea is notified to an investigation agency or a consulate, and the individual's primary residence.  *See* SCt 2008Do4101 (finding that the prosecution failed to establish a continuing purpose of remaining abroad to avoid punishment when defendant was incarcerated in China for a period of eight years) SCt2011Do8462 (the prosecution failed to prove the purpose of escaping when defendant, stowing away to Japan's harbor and making a living as a singer without any approval from both countries for fifteen years' stay in Japan including his marriage to a woman with a permanent resident status).

19. To determine whether a defendant has "stay[ed] abroad for the purpose of escaping criminal punishment," Korean courts consider "various circumstances," including: "the limitations period for the indictment of the pertinent crime"; "circumstances making the offender unable to come back to his/her home country"; "whether the period with such circumstance was long enough to negate the intent of escaping punishment compared with the limitations period of the pertinent crime"; whether the intent to return was notified to the investigative authorities or consulate"; and "where the defendant resides for a living" (*i.e.*, primary residence).  Supreme Court Decision 2008Do4104; see also Supreme Court Decision 2011Do8462 ("[T]he whole circumstances should be considered 'in determining the purpose of escaping criminal punishment' such as the pertinent crime's statute of limitations period; circumstance why the offender did not return; whether the duration of such circumstance is continuous and long enough compared to the pertinent crime's statute of limitations period so that the intent for escape cannot be recognized; whether an intent to return is notified to investigation authorities or the consulate office; and the Defendant's place of living (the Defendant's primary residence).").

20. In 2019, Korea acceded to the European Convention on Extradition of 1957, which provides that Contracting Parties "shall have the right to refuse extradition of its national."  European Convention on Extradition. EST 24 – Extradition, 13.XIII.1957, Art. 6(a).  Thus, nationality many be a hurdle to extradition if the respondent in an extradition request pending in Korea is a Korean national.  William Julié & Juliette Fauvarque, *The rule against the extradition of nationals: overview and perspectives*, available https://www.ibanet.org/article (final visit on Jul.31, 2023). Thus, American courts should consider the nationality principle under article 3 [Nationality] of Extradition Treaty between US and Korea.  Indeed, without clear evidence indicating a suspect's commission, and intent to avoid punishment, of the crime cited in the extradition request, courts where their citizens have resided have taken a careful attitude toward approving extradition requests.  In practice, it is very rare that Korean courts approve extradition request of Korean citizens.  The principle against extradition of its nationals remains reasonable to Korean legal practitioners because Criminal Act of Korea applies to crimes committed outside of Korea by Korean citizen pursuant to article 3 (nationality/personal principle) of the Criminal Act although the principle has

been exposed to criticism from scholars.  Hyeong-Seok Yoo, Protection of Human Right in the Extradition, Law Review vol.28 (Korean Law Association), p.371 (Nov., 2007).

21. Korean courts also consider whether a defendant left Korea before the initiation of an investigation and whether a defendant cooperated with the investigative agency before/after leaving Korea.  For example, the Seoul High Court has held that because a defendant left Korea before an investigation into alleged gift tax evasion began, "it is difficult to say that he was 'staying abroad for the purpose of avoiding criminal disposition,"; as such, the statute of limitations was not suspended.  Seoul High Court Decision 2018no93.  The Supreme Court of Korea decided that a defendant had no purpose of avoiding criminal punishment where, among other things, the individual had won a civil suit filed by the victim and voluntarily cooperated with the investigative agency before leaving Korea, 2002Do3641.

Analysis

22. Ultimately, because Mr. Lee has not "stay[ed] abroad for the purpose of escaping criminal punishment," under Art.253(3) of CPAK, the statute of limitations for each count of embezzlement, which is seven-year under Art.249 CPAK, has lapsed. There has been no indictment for a charge in this extradition request although there has been an extradition case with an indictment already filed.[4]  Therefore, Mr. Lee's extradition is time barred.

23. Objective circumstances inconsistent with the purpose of escape demonstrate that Mr. Lee, an American citizen, returned to the United States before he learned of any criminal investigation against embezzlement and that his purpose in returning home was to raise his family in the United States where he and his wife wished for their children to attend schools, *See* Supreme Court Decision 2008Do4101; 2019Do5925.

   a. *Mr. Lee's Background*:  Mr. Lee is an American citizen who was born and raised in California.  Mr. Lee became employed by Lone Star Funds, an American, Dallas-based private equity fund, after graduating from Harvard Business School in 1995.  In 1999, Lone Star assigned Mr. Lee to an open office in Korea.  Lee's wife and son Jonathan[5] remained home when he first left, demonstrating that Mr. Lee did not intend to relocate permanently to Korea but was traveling there only for a temporary employment opportunity.  They later joined him, but established a residence back in in Texas soon thereafter when the Lees began expecting their second son, Andrew.  *See* Bail Application Exhibits (Feb. 23, 2000 purchase of 12013 Edgestone Road, Dallas, TX home).  Andrew was born six weeks premature on December 8, 2000, and spent the first few months of his life in the U.S.  Mr. Lee's work continued in Korea and the

---

[4] Sang-Hun Choe, American is Extradited to South Korea for Trial in 1997 Murder, NY Times, Sep.22, 2015 (https://www.nytimes.com/).

[5] Mr. Lee has two children:  Jonathan Lee, who is 26 years old, and Andrew Lee, who is 23 years old.  At the time Mr. Lee traveled to Korea to assume his position in Lone Star's Korean office, Mr. Lee was married to Katherine Lee.  Mr. Lee is presently married to Eunkyung ("Mia") You, who is 48.

family returned to Korea in 2001, but soon thereafter, on January 22, 2003, purchased a home in New Jersey to begin preparations for the relocation back to the U.S. in January 22, 2003.  *See* Bail Application Exhibits (15 East Lane, Short Hills, NJ residence deed).  There is nothing to suggest that Mr. Lee ever applied for permanent residency or citizenship in Korea, and I have been advised by him that he did not do so.

b.  *Length of time the defendant is abroad relative to the limitations period*:  Here, the statute of limitations in Korea is only 7 years.  However, Mr. Lee has lived openly in the United States since 2005 (18 years).  That is more than twice the statute of limitations period suggesting that Mr. Lee—who is not an attorney, let alone an attorney practicing Korean criminal law and familiar with the nuances of what might suspend the statute of limitations—did not leave Korea for the purpose of avoiding criminal punishment.

c.  *Mr. Lee returned home before SPO began investigating him*:  Around 2003, when Mr. Lee's children began to reach school age, Mr. Lee and his wife resolved to return to the United States and began the process of relocating back home.  *See* Bail Application Exhibits (15 East Lane, Short Hills, NJ residence deed); Email dated August 4, 2004 regarding recommendations for doctors in New Jersey for Mr. Lee and his family; Email dated September 9, 2004 regarding Mr. Lee's tour of an elementary school in New Jersey for his son Jonathan.  Indeed, Mr. Lee's  successor, Paul Yoo[6], officially registered for a CEO of Lone Star Advisor Korea(LSAK) on July 25th, 2003.  And, while Mr. Lee continued to offer advice, he was no longer CEO of LSAK after August 2003.  *See* Certificate of Business License of Paul Yoo (Heo Won Yoo).

On May 14, 2005, Mr. Lee returned to the United States.  Thereafter, Mr. Lee resigned from Lone Star.  In October 2005, the SPO received a written accusation from the Seoul Regional Tax Office against four individuals involved in Lone Star's investments, including Mr. Lee, and 16 corporations.  ECF No. 1-1 at 39, ¶ 4.1.1.[7]  The SPO investigated the Tax Office's allegations

---

[6] Paul Yoo was indicted with charge of stock-price manipulation, breach of trust and tax evasion, thereby finally receiving sentence of three year imprisonment with suspended fine in 2011.  Seoul High Court Decision 2011No806, 2011Chogi203, 2011Chogi204.

[7] The Tax Office alleged that Mr. Lee embezzled corporate funds of LSAK and HAK "by making payments on phony invoices for the services never rendered."  ECF No. 1-1 at 40, ¶ 4.1.2.  Hun-Joo Cheong, CFO of HAK, was indicted on charges of embezzlement but was found not guilty in 2012.  Supreme Court of Korea 2009Do5935; Seoul High Court 2012No2413 (Hun-Joo Cheong was found guilty of tax evasion and breach of trust).  In light of decisions of Hun Joo Cheong and Paul Yoo, all arrest warrants issued by Seoul District Court (No.15023 issued in 2006, No.2011-26755 issued in 2011, and No.2019-31192 issued in 2019) and political circumstances related to international arbitration award to Lone Star, Mr. Lee is expected to be investigated and tried with charges of not only embezzlement, but also tax evasion, bribery, stock-price manipulation, and breach of trust, which offenses are not mentioned in this extradition request.  It bears noting that this violates Articles 2 and 15 (Rule of Specialty) of the Extradition Treaty.

from October to November 2005, ECF No. 1-1 at 40, ¶ 5.1.1, by which point Mr. Lee had been living home in New Jersey for almost half a year.  The Korean Government alleges that Mr. Lee departed from Korea "while the investigation by the Seoul Regional Tax Office was ongoing."  ECF No. 1-1 at 40, ¶ 5.1.2. However, the criminal investigation in to Mr. Lee did not occur until six months after Mr. Lee returned home.  Further, the Tax Office did not file a complaint to the SPO until October 6, 2005.[8]  Thus, Mr. Lee seemed to have no prior knowledge of the criminal investigation into embezzlement charges, as opposed to tax evasion, when he departed Korea in May 2005.  Since he was not aware of criminal investigation against embezzlement at the time of leaving Korea, he would not have been seeking to flee from anything when he returned to his home country of the United States, particularly given that the plans for him to do so were so long in the making (as is described below).  *See* Seoul High Court Decision 2018no93 (holding that flight to avoid criminal prosecution was not established where the defendant left Korea before the criminal investigation into tax evasion began).

d.   *Permanent* Residence:  Mr. Lee began the process of purchasing a home in Short Hills, New Jersey between 2003 and 2004, years before the initiation of any investigation.  Indeed, Mr. Lee purchased a home in Short Hills, New Jersey in 2003, but when proposed construction on the home was not approved by local authorities, Mr. Lee sold that home on April 19, 2004, *see* Jan. 22, 2003 Deed for purchase of 15 East Lane, Short Hills; April 19, 2004 Deed for sale of 15 East Lane, Short Hills, but shortly thereafter, on July 29, 2004, purchased the home at which he and his family would reside for the next eight years.  *See* July 29, 2004 Deed for purchase of 18 Madison Terrace, Short Hills; https://njparcels.com/sales/0712_2306_12 (New Jersey Parcels records indicating that Mr. Lee sold 18 Madison Terrace on October 21, 2013).  In 2012, Mr. Lee purchased a home at 1414 Whipporwill Way, Mountainside, New Jersey and has lived there with his family ever since.  Mr. Lee initiated the closing on his Korean home during his last visit to Korea, but the sale was not completed until eleven days after his departure on May 14th 2005 based upon public records I have reviewed.  Given Mr. Lee's limited ability to speak and understand Korean, his assistant handled this transaction on his behalf and I understand that he does not currently have access to those records or details about factors that may have influenced timing of the closing for that transaction.

e.   *Cooperation with the SPO and Knowledge of the Charge*:  In 2006, after living at home in New Jersey for almost one year, Mr. Lee's counsel, which is the same counsel who currently represents him, was contacted by the SPO for the first time through Lone Star Fund.  Mr. Lee agreed to telephonically speak with Korean prosecutors and agreed to answer questions in writing.  Mr. Lee, through counsel, also offered to meet in-person with prosecutors under certain conditions, but the SPO declined to avail itself of this opportunity.  The existence of the communication with investigation agency is in sharp contrast

---

[8]   Yonhap News, Lone Star Case Calendar, Nov. 2nd 2006 (in Korean language) (https://n.news.naver.com/mnews/article/001/0001456995?sid=101).

to facts of other cases where the statute of limitations was suspended based upon Article 6 of the Treaty. *See* Prosecutor Kim Yong-sik, Statement of Confirmation, 8.3 & 8.4 (citing unidentifiable whereabouts, flight, etc.). At the time, the prosecutor's questioning focused on whether Lone Star had bribed Korean officials to facilitate the firm's acquisition of Korea Exchange Bank ("KEB"). Though the SPO made reference to a warrant and extradition request, no such documents were served upon Mr. Lee or his counsel, with whom prosecutors were in frequent communication. *See* Communications between Lawrence Lustberg and the Korean SPO dated July 17, 2006, July 19, 2006, July 28, 2006, and August 8, 2006. Additionally, though on August 18, 2006, the SPO stated that "some suspected crime including bribery or illicit lobby case involved with [*sic*] Mr. Steven should be charged soon," there was no mention of the present embezzlement charge. Email dated August 18, 2006. Since 2006, the SPO has made no effort to reach or contact Mr. Lee or his counsel.

f.   *Community Service/Public Life:*  Since returning home in 2005, Mr. Lee has continued to live openly in the United States. He has never used aliases, nor did he ever purchase property or conduct business via a limited liability company or other corporate structure. For example, almost immediately upon returning home from Korea, Mr. Lee enrolled in art history courses at Columbia University for the fall and spring 2005-2006 semesters, openly and using his own name. *See* Columbia University Student Identification Card with Mr. Lee's name and photograph. This is an institution particularly familiar to Korean law enforcement, and thus, Mr. Lee's enrollment to Columbia University is the furthest thing from flight. Indeed, Korean prosecutors typically study at Columbia University Law School . For example, the Current Minister of Justice, Dong-Hoon Han, who requested extradition diplomatically, obtained an LLM from Columbia in 2005, and former Minister, Mi-Ae Choo, who signed extradition request, was a visiting scholar at Columbia in 2004.

In 2005, Mr. Lee began attending public services in Redeemer Church in New York City and, here too, participated openly in fundraising for a new church building in the Upper West Side. Mr. Lee continued to be involved in the church community and began conducting pastoral counseling in Paramus, New Jersey, again all openly and publicly. For the past six years, Mr. Lee has been a devoted and active member of his church community in Praise Presbyterian Church in Somerset, New Jersey. Mr. Lee attends weekly services, donates funds to maintain and repair church facilities, and has led weekly church group discussion and counseling services. He does all of this openly, never hiding his involvement. Likewise, a number of public registrations and filings accurately reflect Mr. Lee's name and address. For example, Mr. Lee has a valid driver's license and passport. The deeds to Mr. Lee's current and prior homes, which are publicly accessible, are in Mr. Lee's own name. Mr. Lee has also registered to vote and donated to public campaigns. He has timely filed his taxes.

g.   *An Italian court previously denied Korea's extradition request as time barred*: Mr. Lee traveled to Italy for vacation with his family on August 5, 2017, when

9

he was arrested in Milan Malpensa Airport based on an Interpol "Red Notice." The Italian court found that any prosecution would be time-barred because "there is no evidence of any actions that have interrupted the lapsing of the statute of limitations." August 17, 2017 Order, Court of Appeal of Milano. The court reasoned that Mr. Lee had cooperated and communicated openly with the Korean prosecutor's office in 2006. *See id.* ("see the copious e-mail correspondence obtained from Mr. Lee's American legal counsel, which attests that numerous contacts between Mr. Lee, his legal counsel and the Korean Prosecutors took place in 2006, with the final release of written affidavits by the person whose extradition is sought."). The decision of Court of Appeal of Milano regarding stock-price manipulation confirms Mr. Lee's lack of knowledge and intent to avoid criminal punishment with respect to the embezzlement charge. Indeed, there has been neither contact nor notice from the Korean Prosecutors Office with regards to the embezzlement charge, including during the arrest and release process in Italy. Indeed, having left Korea before the criminal investigation into that matter, Mr. Lee had neither knowledge nor intent to evade the Korean investigation, and certainly did not have the chance to cooperate with any on-going investigation into embezzlement. Thus, through thirteen (13) years have been elapsed since the commission of the third alleged embezzlement in 2004, the SPO have not engaged in sincere efforts to pursue Mr. Lee as a suspect of the embezzlement charges despite having two arrest warrants issued by Korean courts expired and contacting him through correspondences regarding bribery. This period of 13 years is significant given that the statute of limitation for embezzlement is 7 years.

The Italian court entered its final decision releasing Steven Lee on Aug 17, 2017.[9] The court held that there was no fact preventing the statute of limitations from lapsing regarding stock-price manipulation. Now that six years have passed since the final decision of the Italian court, based on the third arrest warrant (no. 2019-31192, issued on October 29, 2019 by Seoul Central District Court) which was based on alleged criminal conduct which included not only embezzlement alleged here, but also misappropriations and corporate tax evasion, Mr. Lee is subject to extradition request in his home country, the United States. If the extradition request is approved without concrete proof that his intent to avoid criminal punishment has remained during his eighteen-year-long stay in his home country, Article 6 of the Extradition Treaty will be violated.

24. If the request is approved, it is likely that Korean prosecutors will investigate Mr. Lee not only for the embezzlement charges written in the formal extradition request but also other charges of misappropriation and corporate tax evasion. Additionally, it is expected to investigate bribery of officials of the Korean government regarding sale of

---

[9] The second arrest warrant, written by Prosecutor Seok-yeol Yun who is current President of Republic of Korea, was based on misappropriation, tax evasion and embezzlements, and already expired in Nov., 2015.

Korean Exchange Bank to Lone Star Fund and stock-price manipulation charges, not related to embezzlements,[10] since the current extradition request is deeply related to a recent decision of the International Centre for Settlement of Investment Disputes(ICSID) ordering Korean government to offer $216.5 million award plus interest to Lone Star Fund.[11]  It will lead to violation of Art.15 (rule of specialty) of the Extradition Treaty.

Conclusion

25.  *Overall* circumstances indicate that Mr. Lee has had no intent to avoid criminal disposition on embezzlement since he returned home to the United States for the final time in May, 2005.  As a result, he would not be considered a "fugitive" under Korean law and the statute of limitations would not have tolled at any time over the last nineteen (19) years after completion of embezzlement on Oct. 15th, 2004.  The purpose of the statute of limitations under Korean Criminal Procedure should be respected in light of factors indicating legal stability of a suspect during eighteen (18) years of open and peaceful residence in his home country without any crime, far more than the statutory time of seven (7) years.  Additionally, extradition requests, once approved, will lead to investigation of misappropriation, tax-evasion, and other charges, including stock-price manipulation and bribery, not related to embezzlement.  Therefore, Mr. Lee's extradition would violate Article 6 and 15 of the US-Korea Treaty.

---

[10] KBS, successful Investigation ?  extradition requests continuing for fifteen years, Sep. 22nd, 2022 (https://news.kbs.co.kr/news/mobile/view/view.do?ncd=5561885) (Dong-Hun Han, Minister of Justice Responding to Mr.Seung-Won Kim Congressman's Question 'why Michael Tomson was not indicted ?' : "confidential because extradition process against Ellis Short (vice-president of Lone Star Fund), Steven Lee, and Micheal Tomson (Legal Advisor of LSF)" has been going on). (Dong-Hun Han, Minister of Justice, mentioned that Lone Star folks e.g. Steven Lee, Paul Yoo, Michael Thomson and Ellis Short were under stock manipulation charge about fake capital reduction in response to Mr.Seung-Won Kim Congressman's question) The 21st National Assembly (2020-2024) Records, General Assembly 400 session-3, Sep.19, 2022, p.38

[11] More proofs from investigating Steven Lee in Korea in contrast with the decision of ICSID and criminal trial on further investigation on suspicions related to sale of Korean Exchange Bank to Lone Star such as bribery, stock-price manipulation and tax evasion, will work in favor of Korean government and political party in power facing general election for national congressmen next year. Korean government filed an appeal to cancel the decision of ICSID on Sep. 1st, 2023. Boram Park, S. Korea files for cancellation of int'l tribunal's compensation order in Lone Star case, Yonhap News, Sep.1st 2023 (https://en.yna.co.kr/view/AEN20230901004600315)

# List of Publications (July 2023)

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal / Pages | Institution / Date of Publication | Language |
|-----|------|-------------------|------|------------------------|-------------------------|-----------------------------------|----------|
| 1 | Law Journal | 2 | a main author | Research on Improving Standards of Admissibility of Digital Voice-Recorded File under Criminal Procedure Law — Centering on the Possibility of Case Law Emphasizing Hash Value — | Law Review / Vol.32 no.3 p.31-59 | Yonsei Univ. Legal Research Center / Sep. 2022 | Korean |
| 2 | Journal | 3 | co-author | A Study on Forgery Techniques of Smartphone Voice Recording File Structure and Metadata | Journal of the Convergence on Culture and Technology vol.8 no.6 / p.807-812 | International Promotion Agency of Culture Technology / Nov. 2022 | Korean |
| 3 | Law Journal | 1 | author | Critical Research on En Banc Decision of Supreme Court of Korea (2019Do3047) with respect to Out-Of-Barrack Anal Sexual Intercourse between Solders: From the Perspectives of Criminal Law, Christian Ethics, and Comparative Legal Analysis | Church & Law Vol.9 no.1 p.271-302 | Korea Church Law Association Aug. 2022 | Korean |
| 4 | Law Journal | 1 | author | Research on Shifting American Military Legislation and Case Law on Homosexual Behavior, Gay Lesbian Transgender Servicemen, and Gender Reassignment | Soongsil Law Review Vol.50 | Soongsil Univ. Legal Research Institute May. 2021 | Korean |
| 5 | Book | 3 | co-author | **Dictionary of Criminal Law and Procedure: Mongolian, Korean and English** | | National Legal Institute of Mongolia Aug. 2021 | **English-Korean-Mongolian** |

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal / Pages | Institution / Date of Publication | Language |
|---|---|---|---|---|---|---|---|
| 6 | Book | | co-author | Why Healthy-Family Fundamental Law is Undermined ? | p.1~ 255 | Brilliant Idea<br>밝은 생각<br>Mar. 2022 | Korean |
| 7 | Law Journal | 1 | an author | Analyzing Criminal Penalty of Monopoly Restraint Fair Trade Act and Suggesting Proper Revision based on Criminal Law Theory | Soongsil Law Review  vol.47<br>PP.831 ~ 863 | Soongsil Univ. Legal Research Institute<br>May. 2020 | Korean |
| 8 | Law Journal | 1 | An author | Limiting Promotion Activity of Unregistered Student Group Pursuant to Ordinance of Christian University and Excessive Intervention by Governmental Organization: Critical Analysis of Decision of National Human Right Commission | Church & Law Vol.7 no.2<br>pp.256-278 | Korea Church Law Association<br>Feb. 2021 | Korean |
| 9 | Journal | 1 | an author | Research on Comprehensive Anti-Discrimination Law and Related Cases in America | Church & Law vol.7 no.1<br>PP.185 ~ 207 | Korea Church Law Association<br>Aug. 2020 | Korean |
| 10 | Book | 6 | co-author | Anti-Discrimination Bill, Agree or Disagree ? | PP.0 ~ 411 | Brilliant Idea<br>June. 2020 | Korean |
| 11 | Book | 11 | co-author | Life and Sex II | | Brilliant Idea<br>Aug. 2020 | Korean |
| 12 | Law Journal | 1 | an author | Discrimination Standard based on Sexual Orientation under National Human Right Commission(NHRC) Act with respect to Autonomy and Freedom to Religious Education of Religious University — Analyzing NHRC Decisions — | Law Review Vol.29 n<br>PP.1 ~ 36 | Yonsei Univ. Legal Research Institute<br>Mar. 2019 | Korean |

13

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal | Institution | Language |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Pages | Date of Publication | |
| 13 | Law Journal | 1명 | an author | Research on Reformation of Criminal Law and Procedure in Mongolia | North-East Asian Law Review Vol.12 no.2 | **The Institute for Northeast Asian Law Chonbuk National University** | Korean |
| | | | | | PP.121 ~ 147 | Sep. 2018 | |
| 14 | Law Journal | 1 | an author | Decriminalization Policy of Constitutional Court on Conscientious Objection to Military Service and Proper Design on Alternative Service System | Soongsil Law Review vol.42 | Soongsil Univ. Law Research Institute | Korean |
| | | | | | PP.55 ~ 83 | Sep. 2018 | |
| 15 | **Book** | 16 | Co-author | **'Changing South Korean Criminal Law on Sex Offense and Adultery'** Current Legal Issues in South Korea | Korea Legislation Research Institute(KLRI) | | **English** |
| | | | | | (PP. 161 ~ 176) total 367 page | Dec. 2017 | |
| 16 | Journal | 1 | An author | SUGGESTING RATIONAL REVISION ON MILITARY CRIMINAL CODE ARTICLE 92-6 AGAINST SOLDERS' INDECENT BEHAVIOR AND ANAL SEX | Theses of Military Evangelical Association of Korea: Military Mission vol.16 | Military Evangelical Association of Korea | Korean |
| | | | | | pp.67-115 | Oct. 2017 | |
| 17 | Law Journal | 1 | An author | Critical Approach to Anti-discrimination Law with Sexual Orientation: Centering on Research of Anglo-American Law | Soongsil Law Review vol.39 | Soongsil Univ. Legal Research Institute | Korean |
| | | | | | PP.161 ~ 194 | Sep. 2017 | |

| No. | Type | Number of Authors | Role | Title of Thesis (Book) | Name of Journal | Institution | Language |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Pages | Date of Publication | |
| 18 | **BOOK** | 1 | an author | **Strategies to Achieve a Binding International Agreement on Regulating Cartels: Overcoming Doha Standstill** | Springer | **Springer International** | **English** |
| | | | | | pp.1~336 | Apr. 2017 | |
| 19 | Law Journal | 1 | an author | Comparative Legal Research on Criminal Defamation of the Dead & its Implication | GNU Law Review vol.24 no.4 | Gyungsang National Univ. Legal Research Ins. | Korean |
| | | | | | PP.199-226 | Oct. 2016 | |
| 20 | Journal | 1 | an author | **Transplanting Jury Trials in South Korean Legal Soils: Comparative Analysis with Jury Trials in the United States** | Asian Journal of Criminology | Springer Netherland | **English (SCOPUS)** |
| | | | | | PP.111–133 | June.2016 | |
| 21 | Law Journal | 1 | an author | Research on Military Criminal Code Article 92-6 against Solders' Indecent Activity & Anal Sex: Centering on Korean Legal History of Homosexuality, its Harm on Legal Interests, and Analysis of Marcum Case | Soongsil Law Review vol.36 | Soongsil Univ. Legal Research Institute | Korean |
| | | | | | PP.249 – 288 | July 2016 | |
| 22 | Law Journal | 2 | corres-ponding author | The Effect of the Quality of Regulation on the Total Product and the Economic Growth in OECD Countries | Soongsil Law Review vol.34 | Soongsil Univ Legal Research Institute | Korean |
| | | | | | PP.1 – 30 | Jan. 2016 | |
| 23 | Law Journal | 1 | an author | Comparative Legal Research on United Kingdom's Legal Ground of Closed Circuit Television(CCTV) and Criminal Evidence Law with Respect to its Recorded Images | Bub-Jo Vol.64 no.10 | Bub-Jo Association | Korean |
| | | | | | PP.199 – 240 | Oct. 2015 | |

| 24 | Law Journal | 1명 | an author | Research on Vietnamese Laws and Institutions on Administration : Centering on Constitution, Administrative Procedure & Anti-Corruption Law | North-East Asian Law Review vol.9 no.2 | The Institute for Northeast Asian Law Chonbuk National University | Korean |
| | | | | | pp.79 – 103 | Sep. 2015 | |
| 25 | Law Journal | 1명 | an author | Research on Criminal Legislations against Identity Theft & Impersonation through Social Network Services | Criminal Policy Research vol.25 no.3 | Korean Institute of Criminology | Korean |
| | | | | | PP.127 – 159 | Oct. 2014 | |
| 26 | Law Journal | 1 | an author | **Korean Cybercrime Legislation Facing Challenges of Massive Intrusion against Privacy** | Soongsil Law Review | Soongsil Univ. Legal Research Institute | **English** |
| | | | | | PP. 161 ~ 180 | Jul, 2014 | |
| 27 | Law Journal | 2 | a main author | Research on Laws during the Process of Economic Development of Korea: centering on Capital, Labor, and Technology areas | Ewha Law Review | Ewha Women's Univ. Legal Research Inst. | Korean |
| | | | | | PP.299 ~ 341 | Sep. 2013 | |
| 28 | Law Journal | 1 | an author | Research on Shifting Foreign Investment Law and Environmental Law in Mongolia | HUFS Law Review Vol.37 no.3 | Legal Research Ins. of HUFS(Hankook Univ of Foreign Studies) | Korean |
| | | | | | PP.21 ~ 36 | Aug. 2013 | |
| 29 | Law Journal | 2 | corresponding author | Article 20 Obligations under the KORUS FTA: The Deteriorating Environment for Climate Change Legislation in the U.S. | American Constitution Law Journal Vol.24 no.2 | American Constitution Association | **English** |
| | | | | | PP.439 ~ 489 | Aug. 2013 | |

16

| 30 | Law Journal | 1 | an author | Research on a Writ of Habeas Corpus in American Criminal Procedure | Soongsil Law Review vol.30 | Soongsil Univ. Legal Research Inst. | Korean |
| | | | | | PP.21 ~ 40 | Jul. 2013 | |
| 31 | Law Journal | 1 | an author | Research on Penalties against Information-Security Infringing Crimes : centering on so called the Network Act and the Infrastructure Protection Act | New Trend of Law on Criminal Justice No.38 | Supreme Prosecutors Office of Korea | Korean |
| | | | | | PP.140 ~ 173 | 2013.3 | |
| 32 | Journal | 3 | co-author | The Effectiveness of Social Network Service on Political Campaign | e-Biz vol.14 no.1 | International e-Business Association | Korean |
| | | | | | PP.113 - 132 | Mar. 2013 | |
| 33 | **BOOK** | 3 | co-author | Regime Shift and Law of Vietnam 베트남의 체제전환과 법 | n/a | Publishing Center of Seoul National Univ. | Korean |
| | | | | | PP.0 ~ 286 | Dec. 2013 | |
| 34 | Law Journal | 1명 | an author | LEGAL SANCTIONS AGAINST PUBLIC-BID-RIGGING: ISSUES AND IMPROVEMENTS | Korean Public Procurement Journal vol.11 no.2 | Korean Public Procurement Association | Korean |
| | | | | | PP.55 ~ 73 | Dec. 2012 | |
| 35 | Law Journal | 1명 | an author | Comparative Legal Research on the Impact of Decisions  of the U.S. Federal Court on Those of the Supreme Court of Korea | Hong-ik Law Review vo.13-3 | Legal Research Institute of Hongik Univ. | Korean |
| | | | | | PP.411 – 434 | Oct. 2012 | |
| 36 | Law Journal | 1명 | an author | A Research on British Laws regarding Prevention of Dishonest Solicitation and Conflict of Interest & Its Implication | Criminal Law Research vol.24-3 | Korean Criminal Law Association | Korean |
| | | | | | PP.291 - 311 | Sep. 2012 | |

| 37 | Law Journal | 2명 | 주저자 | Liberalization of Cyber-Election Campaign through Social Network Service & Response of Criminal Penalty of Public Election Act to Cyber-Election Crime | Law Review Vol.46 | Korean Law Association | Korean |
| | | | | | PP.261-290 | May. 2012 | |
| 38 | Law Journal | 1명 | an author | Rule for Distinguishing Bid-rigging from Joint-bidding through Establishing Consortium in Public Bid | Bub-Jo vol.61 no.4 | Bub-Jo Association | Korean |
| | | | | | PP.49-80 | Apr. 2012 | |
| 39 | Journal | 1명 | an author | Cyber-Security Law in the United States: Centering on Responses of Legislative, Judiciary, and Executive Body | Internet & Information Security | Korea Internet & Security Agency | Korean |
| | | | | | PP.109-131 | Jan. 2012 | |

| 40 | Law Journal | 1명 | an author | Implementing Reasonable Rules for Imposing Criminal Penalty on Joint Bidders in Public Bid: Critical Comment on South Korea's Case | Currents International Trade Law Journal | South Texas College of Law | **English** |
| | | | | | PP.330-359 | Dec. 2011 | |
| 41 | Journal | 1명 | an author | Trend of Vietnamese Law Research in Korea : from 2002 to 2011 | Vietnamese Studies Review vol.11 | Korean Association of Vietnamese Studies | Korean |
| | | | | | PP.161 ~ 180 | Nov. 2011 | |
| 42 | Law Journal | 1명 | an author | the impact of social network sites on election and regulation under election law : centering on the United States and Canada | New Trend of Criminal Law | Supreme Prosecutors' Office | Korean |
| | | | | | PP.84 - 109 | 2011.9 | |
| 43 | Journal | 1명 | an author | Construction and Legal Policy of Breach of Trust under Korea Criminal Code regarding Corporate Governance in light of two Supreme Court`s Decisions on Samsung Everland and SDS | Journal of Regulation Study vol.20-1 | Korean Economic Research Institute | Korean |
| | | | | | PP.113-144 | 2011.7 | |

18

| 44 | Law Journal | 1명 | an author | Comparative Legal Analysis of Principle of Indictment without Surplusage :sec.118(2) of Regulations on Criminal Procedure in Korea and U.S. Federal Criminal Procedure Rule 7(d) | Bub-Jo vol.60 no.2 / PP.142 – 184 | Bub-Jo Association / Feb. 2011 | Korean |
| 45 | BOOK | 11 | co-author | Corporate Crime Research 기업 범죄 연구 | (PP.99-118) Total 345page | Kyung-in Moon-Hwa Co. / Feb. 2011 | Korean |
| 46 | Journal | 1명 | an author | A Current Status of the Internet based Transactions related to Crime and its Countermeasure in Korea and the U,S. | Korean On-line Business Review / PP.39-60 | Korean Online Business Association / Dec. 2010 | Korean |
| 47 | Law Journal | 1명 | an author | Applicability of principle of Indivisibility of Criminal Complaint Exclusive Accusation under Antitrust Law | Bub-Jo vol.59 no.11 / PP.223-265 | Bub-Jo Association / 2010.11 | Korean |
| 48 | BOOK | 1명 | an author | Realities, Law, Practices of Cybercrime in the U.S. 미국의 사이버범죄 현실, 법, 실무 | n/a / PP.1 ~ 270 | Korean Institute of Criminology / Dec. 2010 | **English** & Korean |
| 49 | Law Journal | 1명 | an author | Limited Coverage of Criminal Suspect's Right not to Reveal One's Face against His/Her Will : Comparative Analysis to the U.S. Law | Soongsil Law Review vol.24 / PP.115 – 144 | Soongsil Univ. Legal Research Institute / May. 2010 | Korean |
| 50 | Law Journal | 1명 | an author | Comparative Legal Analysis of United States' Criminal Contempt of Court and Korea's Criminal Code sec.140 so as to Secure the Effectiveness of Injunction | Korean Journal of Comparative Criminal Law vol.11-2 / PP.285 ~ 307 | Korean Comparative Criminal Law Association / Dec. 2009 | Korean |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51 | Law Journal | 1명 | an author | Comparing 'Fruits of the Poisonous Tree Doctrine' in Criminal Procedures of the U.S. and Korea in light of Supreme Court Cases regarding Admissibility of Secondary Evidence Obtained through Statement without Miranda Warning | Joong-Ahng Law Review vol. 11 no.2 / pp.249- 284 | Joong-Ahng Law Association / Nov. 2009 | Korean |
| 52 | Law Journal | 1명 | an author | Infringement of Duty to Protect Pedestrians in a Crosswalk in Korea's Transportational Criminal Law under Comparative Analysis with the U.S. and the Vienna Convention | Korea Law Review vol.54 / pp.243 -282 | Korea Univ. Law Research Institute / Sep. 2009 | Korean |
| 53 | Law Journal | 1명 | an author | Bid-Rigging: the Object of Strict Application of a Provision against Bid/auction Interference (Korean Criminal Code Art.315) | Journal of Criminal Law vol.21 no.2 / PP.79- 98 | Korean Criminal Law Association / 2009.8 | Korean |
| 54 | Journal | 1명 | an author | Proper Regulation on LBO(Leveraged-Buy-Out) | Journal of Regulation Study / PP.107 - 141 | KERI / 2009.6 | Korean |
| 55 | Law Journal | 1명 | an author | Effective Strategies for International Agreement Regulating Cartels | International Trade Law / PP. 149-192 | Ministry of Justice of Korea / 2009.6 | **English** |
| 56 | Disserta-tion | 1명 | an author | The Effective Approaches of International Law regarding Cartels | S.J.D. Dissertation / PP.1 ~ 350 | Golden Gate University School of Law / 2008.9 | **English** |
| 57 | Law Journal | 1명 | an author | Using Action in Damages to Improve Criminal Penalties against Cartels: Comparative Analysis of Competition Law of United States and South Korea | Currents: International Trade Law Journal / PP.55-69 | South Texas College of Law / 2007.12 | **English** |

| 58 | Disser-<br>tation | 1명 | an author | Research on Properness of Penalty of Anti-<br>Monopoly Law and its Alternative<br><br>독점규제형법의 정당성과 그 대안에 관한<br>연구 | Master of Law<br>Dissertation<br><br>PP.1-131 | Graduate School of<br>Korea Univ.<br><br>2002.8 | Korean |