

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: 973-639-6285
llustberg@gibbonslaw.com

December 11, 2023

**VIA ECF**

Honorable Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Federal Building and U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

    Re:    **In re Extradition of Steven Lee, Mag No. 23-9089**

Dear Judge Waldor:

    As Your Honor is aware, this Firm represents respondent Steven Lee in the above-referenced matter. Mr. Lee respectfully requests that the Court accept this letter by way of brief sur-reply to the Government's Reply, ECF No. 32 ("Reply Br."), which introduced a new submission from the Korean government, to which Mr. Lee has not had the opportunity to respond.

    As set forth in further detail below, Mr. Lee seeks to address three aspects of the Government's Reply that either misunderstand his arguments or ignore the applicable law. *First*, the Government contends that Mr. Lee's valid concern that the prosecution of the embezzlement charges described in the extradition request is really a subterfuge and that the real purpose of the extradition is to make him available as a witness in the arbitration proceedings against Lone Star is "[b]ased on [u]nfounded [s]peculation." Reply Br. at 2. But the Government does not even attempt to address the significant journalistic sources and documentary evidence demonstrating that Korea is, in fact, attempting to extradite Mr. Lee principally to use him as a witness in its decades-long legal battle with Lone Star. *See* ECF No. 28 ("Opp.") at 30-36. *Second*, the Government argues that there is no time bar to Mr. Lee's extradition; but, in so contending, it completely ignores half of the inquiry – *i.e.*, United States law, which the Court is required to consider under Article 6 of the Treaty. And *third*, the Government submits that Mr. Lee's arguments concerning his fear of torture are not reviewable by the judiciary and are not ripe because the Secretary of State has not certified Mr. Lee's extradition. But this assertion ignores the humanitarian exception principle, which bars extradition under extraordinary circumstances even before the matter is certified to the State Department.

    Each of the Government's arguments is legally flawed and does not support Mr. Lee's extradition. Accordingly, the extradition request should be denied. Alternatively, the Court should order an evidentiary hearing so that Mr. Lee may have the opportunity to challenge the credibility of Korea's assurances as to its reasons for attempting to extradite Mr. Lee, including the new evidence that it has included in its opposition.

GIBBONS P.C.

December 11, 2023
Page 2

**1. The Government has not rebutted Mr. Lee's substantial evidence that his extradition is a subterfuge and the Court cannot accept the conclusory certification without a hearing on the issue of whether Articles 1 and 15 bar his extradition.**

As Mr. Lee set forth in his Opposition Brief, his extradition is barred under Article 1 of the Treaty because its principal purpose is not, in fact, the "prosecution, trial, or imposition or execution of punishment." Art. 1. Indeed, Mr. Lee has provided substantial and effectively unrebutted evidence demonstrating that Korea's intent is to make him a witness against his former employer in an effort to overturn a large, and very high profile, arbitration award that has proven embarrassing to the Korean government. Opp. at 30-40. Because Mr. Lee has not provided or been able to provide information favorable to the Korean government in the arbitration, Korea now seeks to use this extradition proceeding to coerce him to do so by instituting an embezzlement prosecution for decades old conduct, which was long ago the subject of complete restitution and is not being sought by the victim of the conduct at issue. For example, Mr. Lee has provided several news reports in which Korean officials have openly acknowledged that they have sought Mr. Lee's extradition to support their attempt to overturn the ICSID arbitration award ordering Korea to pay $216.5 million to Lone Star. *Id.* at 32–33 (collecting sources). Mr. Lee has also provided email communications between his counsel and Korean prosecutors that demonstrate the long history of Korea's attempts to obtain information from Mr. Lee regarding alleged bribery in connection with Lone Star's acquisition of a Korean bank; specifically, Korean Prosecutor Yung San Lee represented to Mr. Lee's counsel in 2006 that Korea would provide Mr. Lee with immunity if he revealed "lobbying schemes involving financial favors" in connection with the bank deal. Opp. at 35, ECF No. 28-22. In addition, Mr. Lee provided the Expert Opinion and Report of Ambassador Martin Uden, which concludes that "the Korean government in this case is now seeking to extradite Mr. Lee, not in order to answer to allegations dating from 2003-5, but instead to interrogate him in order to strengthen their grounds for appeal against the [International] Tribunal's findings against Korea or otherwise invalidate the Tribunal's award." ECF No. 28-3 ¶ 52. In light of this extensive evidence, Mr. Lee's arguments about the Korean government's ulterior motives for seeking his extradition are far from unfounded speculation, as the Government alleges.

Rather than engage with this evidence,[1] the Government submits, for the first time, a certification from the Korean Ministry of Justice, purporting to confirm Korea's intent to prosecute

---

[1] The Government responds to only one news article, cited in Amb. Uden's report, which noted Korea's intent to indict Keith Yoo, a respondent in a previous extradition matter who was surrendered to Korea, for additional crimes that were not alleged in his extradition complaint. Reply Br. (citing ECF No. 28-2 at ¶ 50 n.50). According to the Government, the article demonstrates Korea's intent to comply with the rule of specialty by seeking "additional consent from the United States in accordance with the extraction treaty." *Id.* But it is not clear – and the Government does not assert – that Korea did in fact seek such consent, even assuming that doing so would comply with the Treaty. The point, in any event, is that Korea has a history of expanding prosecution beyond the crimes alleged in a defendant's extradition complaint; it was for that reason

GIBBONS P.C.

December 11, 2023
Page 3

Mr. Lee for the embezzlement charges identified in the extradition complaint. Reply Br. at 3; ECF No. 32.1. But this certification is entirely conclusory, and does not even try to address the facts cited by Mr. Lee, including the press reports and previous statements from Korean prosecutors described above. Nor does it address the suspicious timing of Korea's extradition request, which was made just one month after the ICSID arbitration panel was reconstituted and new hearings were ordered, after Korea had previously failed to pursue extradition for nearly 20 years. *See* Opp. at 57. Under these circumstances, the Court should reject the last-minute certification as entirely self-serving and unsupported. At the very least, the Court should convene an evidentiary hearing at which the author of the Korean Government's certification can be cross-examined with regard to those matters.[2]

### 2. This Court must apply the U.S. statute of limitations, which the Government ignores.

Mr. Lee set forth in detail why his extradition is barred by the statutes of limitations of both the United States and Korea. Opp. at 40-58. In its Reply, the Government fails even to mention, let alone address U.S. law, even though it is required to do so by Article 6 of the Treaty. Article 6

---

that, as Ambassador Uden concluded "the preparedness of the prosecution to ignore the rule on speciality is of concern in Mr Lee's case." ECF No. 28-3 at ¶ 51.

[2] The law supports the necessity of such an evidentiary hearing. "[A] defendant in an extradition proceeding has a due process right to a hearing before being extradited." *In re of Extradition of Singh*, 123 F.R.D. 108, 125 (D.N.J. 1987). Indeed, a hearing is specifically required by the federal extradition statue. *See* 18 U.S.C. § 3184 ("[A]ny magistrate judge . . . may . . . issue his warrant for the apprehension of the person so charged, that he may be brought before such . . . magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such a hearing, he deems the evidence sufficient to sustain the charge . . . , he shall certify the same[.]"); *see also in re Extradition of Kawalek*, 187 F. Supp. 861, 862 (D.N.J. 1960) ("A hearing was duly held on September 13, 1960, as required by 18 U.S.C. § 3184, at which was presented evidence of criminality in support of the complaint."). Although evidentiary hearings in the extradition context usually focus on the probable cause requirement of the applicable extradition statute, *see Sidali v. I.N.S.*, 107 F.3d 191, 195 (3d Cir. 1997), that is not the only possible basis for a hearing, as it is not in this case. Here, for example, the Court must determine whether the applicable treaty "authorizes" the respondent's extradition. *In re Extradition of Bolanos*, 594 F. Supp. 2d 515, 517 (D.N.J. 2009) (noting that, to issue a certificate of extradition, courts must determine "whether the treaty authorizes the extradition for the crime alleged to have been committed"). That, in turn, depends upon the credibility of the facts set forth in the Government's new submission, which will determine whether the respondent "is subject to surrender to the government of the requesting country." *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006); *see also Sidali*, 107 F.3d at 194–95 ("The purpose of the proceeding is to determine whether an individual who has been arrested in the United States, pursuant to a complaint filed on behalf of a foreign government, is subject to surrender to the government of the requesting country."); *in re Extradition of Okeke*, No. 96-7019P-01, 1996 WL 622213, at *2 (D.N.J. Sept. 5, 1996) (same).

GIBBONS P.C.

December 11, 2023
Page 4

provides that "[e]xtradition may be denied . . . when the prosecution or the execution of punishment of the offense for which extradition is requested would have been barred because of the statute of limitations of the *Requested State* had the same offense been committed in the *Requested State*." Art. 6 (emphasis added). In other words, a U.S. court considering an extradition request must consider the U.S. statute of limitations. In addition, a U.S. court must also consider the U.S. law on flight: 18 U.S.C. § 3290 states that "[n]o statute of limitations shall extend to any person fleeing from justice." S. Exec. Rep. No. 106-13, 106th Cong., 1st Sess (1999) at 14 ("The second sentence of [Article 6] adopts the U.S. Standard, stating that the period during which the person for whom extradition is sought fled from justice does not count towards the running of the statute of limitations.").

Here, there are two reasons why Mr. Lee's extradition is barred by U.S. law, as he has shown. *First*, applying the five-year statute of limitations under U.S. law, 18 U.S.C. § 3282, the three offenses alleged in the extradition complaint became time barred on December 8, 2005, November 5, 2008, and October 15, 2009. Opp. at 46–48. And *second*, because Mr. Lee did not flee from justice, the limitations period has never been tolled under U.S. law. Opp. at 48–52. The Government does not rebut – or even try to rebut – either argument. Instead, the Government contends only that this Court may not question Korea's self-serving determination that there is no time bar to Mr. Lee's extradition. Reply Br. at 5. But the Government cannot ignore the other half of Article 6,[3] which requires it to consider U.S. law in addition to Korean law.[4] Its failure to do so is fatal to this extradition request.

---

[3] *See Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 458 (D.N.J. 1999) ("It is a cardinal principle of construction that courts shall interpret contracts, including treaties, so as to give meaning to each provision rather than rendering some provisions, or portions thereof, superfluous."); *Harris v. Kellogg, Brown & Root Servs., Inc.*, 796 F. Supp. 2d 642, 653 (W.D. Pa. 2011) (same).

[4] Indeed, even when Korean law is applied to this matter, Mr. Lee's prosecution is time-barred. As the Court knows from his prior submissions, Mr. Lee does not dispute Korea's statement of the law in Korea, specifically Articles 252 and 253 of the Korean Criminal Procedure Act, which provide that the limitations period begins after a criminal act is completed and that such period is suspended "during the period, for which an offender stays abroad for the purpose of escaping criminal punishment." ECF No. 1-1 at 51. But Korea's statement of what the law is does not and cannot determine how that law should be applied to the facts of this case, *i.e.*, whether Mr. Lee "stay[ed] abroad for the purpose of escaping criminal punishment," ECF No. 1-1 at 51, which is a matter for this Court, in the exercise of its traditional judicial power, to determine. *See Curry v. Mississippi Dep't of Corr.*, No. 13-76, 2013 WL 2469630, at *3 (S.D. Miss. June 7, 2013), *aff'd sub nom. Curry, Jr. v. Mississippi Dep't of Corr.*, 586 F. App'x 165 (5th Cir. 2014) ("[R]uling on the statute of limitations [is] clearly within the normal judicial function[.]"); *see also TIG Ins. Co. v. EIFlow Ins. Ltd.*, No. 14-CV-459, 2015 WL5714686, at *5 (D.N.H. Sept. 29, 2015) ("While nothing could be easier than applying the forum's statute of limitations, no subject of foreign law could probably be ascertained with greater ease than a limitation period.") (internal quotation marks and citations omitted). For the reasons set forth more fully in Mr. Lee's Opposition Brief,

GIBBONS P.C.

December 11, 2023
Page 5

### 3. The Humanitarian Exception Principle bars Mr. Lee's extradition.

Finally, Mr. Lee has explained in detail why the extraordinary facts of this case should preclude his extradition. Opp. at 58–64. He has pointed to a finding by a British court in a similar extradition matter that the respondent would likely be tortured in Korean prisons. He has demonstrated Korea's intention to interrogate him in an effort to overturn a politically unfavorable arbitration award, and has documented the political vilification in Korea of foreigners as capitalist vultures, including his former employer, Lone Star. Finally, he has established his fragile health, including the fact that he has, within the past few weeks, undergone a quadruple bypass procedure following a heart attack. Of course, the Government shows little concern about these life-or-death issues, instead relying entirely upon the doctrine of non-inquiry, which, it claims, bars the Court from even considering these humanitarian concerns. Reply Br. at 5-7.

But the law is clear that rule of non-inquiry cannot be "regarded as absolute." *United States v. Kin-Hon*, 110 F.3d 103, 112 (1st Cir. 1997) (recognizing that circumstances may exist to bar extradition before the matter is certified to State Department where the foreign country's procedures or punishment "shocks the conscience."); *Prushinowski v. Samples*, 734 F.2d 1016, 1019 (4th Cir.1984) (noting that the rule of non-inquiry cannot "be carried out to absolute extremes without developing fissures" and that extradition may be denied if a respondent will be subject to egregious punishment). Indeed, the Third Circuit has specifically recognized that this humanitarian exception to non-inquiry may bar extradition under certain circumstances. *Hoxha*, 465 F.3d at 563, 564 n. 14 (declining to apply humanitarian exception) (citing *Gallina v. Fraser*, 278 F.2d 77 (2d Cir.1960)). This case, respectfully, presents just such unique circumstances, described above and in Mr. Lee's prior submissions – including the truly extraordinary fact that nearly two decades have passed since the alleged crimes have occurred, and the putative victim of Mr. Lee's alleged embezzlement has been made whole and expressed no interest in his prosecution.

\*   \*   \*

---

which includes the opinions of Korean law expert Professor Sanghyun Lee on the subject, objective circumstances indicate that Mr. Lee had had no intent to avoid criminal punishment when, per his prior plans, he returned home to the United States for the final time in May, 2005. Opp. at 52-58. Nor does Mr. Lee's conduct over the last two decades – including living openly in the same area here in New Jersey, and even corresponding, through counsel, with Korean prosecutors during their investigation in 2006 – demonstrate an intent to avoid punishment. Accordingly, he cannot be considered a "fugitive," even under Korean law, and the statute of limitations would thus not have been tolled at any time over the last nineteen years, making it long ago expired at this point. *See id.*

GIBBONS P.C.

December 11, 2023
Page 6

      Mr. Lee's extradition should be barred based on Articles 1, 6, and 15 of the Treaty, as well as on humanitarian grounds.  In the alternative, a hearing should be held to assess the credibility of Korea's assurance that it seeks to prosecute Mr. Lee in accordance with Article 1 and that it will comply with Article 15's specialty doctrine.

                                      Respectfully submitted,

                                        Lawrence S. Lustberg

cc:  All counsel of record